STATE OF CONNECTICUT *v.* WILLIE MCFARLAND
(12549)

DUPONT, C. J., and LAVERY and HEIMAN, Js.

Argued October 24—decision released December 20, 1994

*Brian S. Carlow,* assistant public defender, with whom, on the brief, was *Michael Alevy,* legal intern, for the appellant (defendant).

*Pamela S. Meotti,* deputy assistant state's attorney, with whom, on the brief, were *Michael Dearington,* state's attorney, and *James Clark,* assistant state's attorney, for the appellee (state).

DUPONT, C. J. The defendant appeals from the trial court's judgments revoking his probation and committing him to the custody of the commissioner of correction to serve a sentence of six years. The only issue on appeal is whether the defendant could be lawfully subjected to a charge of violating his probation for conduct committed at a time when he had been mistakenly released from prison and had not yet served his properly calculated prison term.[1] The defendant argues that his probation could not have commenced at the time he allegedly violated probation because he had not yet been "released" from imprisonment as required by General Statutes § 53a-31.[2]

Certain facts are relevant to this appeal. The defendant was convicted on July 29, 1988, of sexual assault in the first degree and escape from custody. He was sentenced to terms of thirteen years, suspended after seven years, with five years of probation on the sexual assault charge, and ten years, suspended after five years, with five years of probation on the escape charge. He was released from the Connecticut correctional institution at Somers on August 25, 1992. Six days later, on August 31, he was arrested and charged with burglary in the first degree and sexual assault in

---

[1] The defendant concedes that if he was lawfully on probation, the state produced sufficient evidence to establish a violation of probation, and we do not discuss the facts of the alleged conduct found by the trial court to constitute a violation of probation.

[2] General Statutes § 53a-31 (a) provides in pertinent part: "A period of probation or conditional discharge commences on the day it is imposed, except that, where it is preceded by a sentence of imprisonment with execution suspended after a period of imprisonment set by the court, it commences on the day the defendant is released from such imprisonment. . . ."

the first degree. Subsequently, the state filed separate informations alleging the same offenses and violations of probation arising from that criminal conduct.

The state filed a motion to consolidate all three cases for trial, which was granted over the defendant's objection. The cases were consolidated, and the substantive case was tried to the jury and the charges of violation of probation were tried to the court. The jury was unable to agree on a unanimous verdict as to either the burglary or sexual assault charges, or on any of the lesser included offenses of those charges, and the trial court declared a mistrial and discharged the jury. The court then heard additional evidence as to the charges of violation of probation. The court found the defendant in violation of probation and sentenced the defendant to a term of six years of imprisonment, the time remaining to be served on the July 29, 1988 convictions.

The defendant argues that he was not lawfully on probation on August 31, 1992, because he should not have been released from incarceration for the July 29, 1988 convictions until September 18, 1992. The defendant claims that he was mistakenly awarded "pretrial credit" pursuant to General Statutes § 18-98d, to which he was not entitled.[3] This erroneous award of pretrial credit resulted in his release from prison on August 25, 1992, rather than on September 18, 1992, the date the defendant argues he should have been released. In addition, the defendant argues that the August 25, 1992 release was unlawful because although the commissioner of correction could have awarded him 120 days

---

[3] Between August 22 and October 16, 1987, the defendant was serving a sentence for a previous offense unrelated to either the July 29, 1988 convictions for sexual assault and escape from custody or the alleged conduct that resulted in the revocation of his probation at issue here. The state's evidence was that the defendant was not entitled to pretrial credit toward his sentence for the sexual assault and escape charges until October 16, 1987, when he was discharged from his sentence for the previous unrelated offense. See General Statutes § 18-98d (1).

of outstanding meritorious performance credit pursuant to General Statutes § 18-98b, making August 25, 1992, a proper date of release, the department of correction records indicated that the defendant had been awarded only ninety-five days of such credit. In essence, his claim is that the commissioner of correction has no authority to "accelerate" a defendant's release from the commissioner to the office of adult probation.[4]

The defendant argues that despite the fact that he was physically released from the authority of the commissioner of correction on August 25, 1992, he remained in actual custody on that date, rather than being subject to the supervision of the office of adult probation, and, therefore, on August 31, 1992, his probationary period had not yet commenced.[5] He claims that probation, as a matter of law, does not commence until the end of the properly calculated custodial portion of a sentence. In claiming that he was in "actual custody" of the department of correction on August 31, 1992, the date of the underlying offenses that were the subject of the probation revocation hearing, the defendant equates his status to that of an escapee or one placed in an alternative incarceration program.

The state argues that General Statutes § 53a-31 does not require the calculation of a proper release date from which to determine the commencement of probation. Rather, according to the state, probation commences

___

[4] The defendant relies on the trial testimony of the records specialist at the New Haven correctional center, Charlene Apuzzo, in calculating his proper release date.

[5] According to the testimony of the victim of the alleged burglary and sexual assault, and according to the defendant's own testimony, the defendant, more likely than not, understood that he was on probation. The victim testified that after the alleged sexual assault, the defendant told her, "I just got out of jail, and [am] probably going to go back." The defendant testified that he told the victim, "I just recently got out of jail. I want no trouble."

by operation of law on the actual date of release. The state conceded at oral argument that in this case, the defendant's release may have been a mistake. A state's witness, the probation officer who supervised the defendant's probation, testified that she considered the defendant to have commenced probation on the date of his release, August 25, 1992. She relied on a computer printout from the department of correction, which the office of adult probation uses to determine the date of release.

The transcript of the trial court's oral ruling indicates that the court found that the state had proved beyond a fair preponderance of the evidence that on August 31, 1992, the defendant committed acts of burglary in the first degree and sexual assault in the first degree. The court also found that the properly calculated date of release was irrelevant to the commencement of the defendant's probation and ruled that the defendant's probation commenced under § 53a-31 on the date of his actual release from imprisonment. We affirm the judgments of the trial court.

A trial court " 'may continue or revoke the sentence of probation or conditional discharge or modify or enlarge the conditions, and, if such sentence is revoked, require the defendant to serve the sentence imposed or impose any lesser sentence.' " *State* v. *Davis,* 229 Conn. 285, 290, 641 A.2d 370 (1994), quoting General Statutes § 53a-32 (b). In making this determination, the trial court is vested with broad discretion. *State* v. *Davis,* supra, 290. In this case, however, an issue of law must be determined before any question of discretion is reached. The court's legal conclusion that the defendant was subject to a charge of violation of probation is subject to our plenary review. *State* v. *Torres,* 230 Conn. 372, 379, 645 A.2d 529 (1994), citing *State* v. *Geisler,* 222 Conn. 672, 693, 610 A.2d 1225 (1992). The issue is capable of resolution because there is an undisputed factual record. *State* v. *Torres,* supra, 380.

The determination of when probation "commences" is an issue of first impression in Connecticut. Its resolution requires an interpretation of § 53a-31 (a). There is no reported case law interpreting the phrase "commences on the day the defendant is released from such imprisonment," as used in that statute. The defendant construes the phrase to mean that probation commences, as a matter of law, on the properly calculated date of release, whereas the state construes it to mean that probation commences as a matter of law on the date of actual release, even if the date of actual release is earlier than the date the defendant should have been released. Basic to the defendant's argument is that until release on the properly calculated date, the defendant is in the custody of the commissioner of correction.

Although it is true that a person, while on home release, is subject to the authority of the commissioner of correction; *State* v. *Deptula,* 34 Conn. App. 1, 10, 639 A.2d 1094 (1994); see also *Asherman* v. *Meachum,* 213 Conn. 38, 48, 566 A.2d 663 (1993); the defendant in this case was not a participant in a home release program. He presented no evidence to support his claims that he was either an escapee or a participant in an alternative incarceration program. Escape from prison is a crime under General Statutes § 53a-169. Generally speaking, one who escapes from prison is a fugitive from justice. See *State* v. *Gordon,* 197 Conn. 413, 424, 504 A.2d 1020 (1985). In the present case, the defendant was released from prison by the commissioner of correction, and his whereabouts were known; he was not an escapee. Similarly, he cannot claim that he was a participant in an alternative incarceration program, such as home release, because such programs involve restrictions on liberty and close supervision. See *Asherman* v. *Meachum,* supra, 41.

Although there is no case law directly on point, guidance can be gleaned from previous cases. Probation

commences upon the termination of the custodial portion of the sentence by operation of law. *State* v. *Wright,* 24 Conn. App. 575, 579, 590 A.2d 486 (1991). The crux of the defendant's claim in *Wright* was that the state's failure to inform him on his release from prison that he was on probation constituted a violation of his due process rights. In rejecting that claim, we noted that the record indicated that "the defendant understood that probation was part of the sentence imposed on him, the terms of that sentence being announced in open court. *The court never specified when probation would commence; it has no duty to do so. Nor is there any such requirement upon his release from prison.*" (Emphasis added.) Id. Implicit in the decision is the rationale that neither the judicial system nor the department of correction has an affirmative duty to inform the defendant when probation commences because the termination of custody provides the demarcation between service of a sentence and the beginning of a probation period.

We must next decide whether custody terminates on the day the "defendant is released from such imprisonment" as described in § 53a-31 (a). Although penal statutes such as § 53a-31 et seq. are to be strictly construed in favor of the accused, such construction should not exclude common sense so that absurdity results and the evident design of the legislature is frustrated. *State* v. *Pastet,* 169 Conn. 13, 21–22, 363 A.2d 41, cert. denied, 423 U.S. 937, 96 S. Ct. 297, 46 L. Ed. 2d 270 (1975). If two constructions of a statute are possible, we will adopt the one that makes the statute effective and workable, not the one leading to difficult and bizarre results. *Muller* v. *Town Plan & Zoning Commission,* 145 Conn. 325, 331, 142 A.2d 524 (1958).

The construction of § 53a-31 et seq. argued by the defendant would lead to a bizarre result. To hold that the defendant was not on probation until his properly

calculated release date would in effect allow him to commit acts that could be the subject of a criminal prosecution and yet remain immune from the possibility of a revocation of probation simply because he was prematurely released from custody, mistakenly or otherwise. The defendant cannot take advantage of an early release from imprisonment and then expect to be immune from a charge of probation violation for acts he committed thereafter.

The word "release" has been interpreted by our Supreme Court in other contexts to connote a physical release from confinement or imprisonment. See *State* v. *Hanson,* 210 Conn. 519, 556 A.2d 1007 (1989). We have been unable to find any support for the defendant's reading of "release" as being contingent on a properly calculated date of discharge.

The defendant has presented no compelling argument for this court to adopt the strained interpretation he urges. The public policy consideration of discouraging criminal activity is fostered by the state's interpretation, and is a factor in our consideration of the issue. The case of *Payton* v. *Albert,* 209 Conn. 23, 547 A.2d 1 (1988), supports our conclusion. *Payton* was an appeal by the commissioner of correction from the granting of an application for a writ of habeas corpus. The gist of the petitioner's complaint in *Payton* was that the commissioner of correction had erroneously calculated the effective release date on the petitioner's two concurrent sentences of two and one-half years each. The petitioner claimed that he was entitled to a sentence reduction for the time he had spent in presentence confinement, regardless of which sentence caused his subsequent imprisonment. In effect, he sought to credit jail time accrued for one offense toward the sentence imposed in another. The court rejected this argument and remanded the matter to the trial court with instruction to deny the petition. "A peti-

tioner should not, upon posting bail, leave a correctional center with the perception that there is jail time accrued in his name which may be applied to subsequent sentences that may follow criminal activity occurring after his release on bail but before the disposition of the original charges." Id., 33–34. The court further noted that " '[t]he principle that extra time served on a criminal sentence may not be "banked" is strongly rooted in the public policy that individuals should not be encouraged to commit crimes knowing they have a "line of credit" that can be applied against future sentences.' " Id., 34. Nor should individuals be allowed to "cheat" the system of justice twice, first by being released before a full sentence has been served, and second, by seeking immunity from a finding of a violation of probation based on a mistaken release.

We hold that the term release as used in General Statutes § 53a-31 includes physical release from custody, whether by mistake or not, and that probation commences by operation of law on the date of the actual release from imprisonment.

The judgments are affirmed.

In this opinion the other judges concurred.