STATE OF CONNECTICUT *v.* VAUGHN D. OUTLAW
(AC 19284)

Foti, Landau and Dupont, Js.

Argued June 1—officially released October 24, 2000

*Katerina M. Rohner*, with whom, on the brief, were *Donald D. Dakers*, special public defender, and *Brian Driscoll*, law student intern, for the appellant (defendant).

*Bruce R. Lockwood*, deputy assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *James G. Clark*, senior assistant state's attorney, for the appellee (state).

*Opinion*

LANDAU, J. The defendant, Vaughn D. Outlaw, appeals from the judgment revoking his probation and committing him to the custody of the commissioner of correction (commissioner) to serve the suspended portion of a sentence imposed on April 4, 1986. Although the defendant concedes that there was sufficient evidence to support the trial court's conclusion that he violated the terms of his probation, he claims, on appeal, that the court improperly denied his motions to dismiss the violation of probation charges because (1) his term of probation had expired before the arrest warrant for violation of probation was issued and (2) General Statutes § 53a-32 does not permit the state to amend the factual basis for a violation of probation charge. We affirm the judgment of the trial court.

The following facts[1] and procedural history are relevant to this appeal. On April 4, 1986, the defendant pleaded guilty under the *Alford* doctrine[2] to a charge of robbery in the first degree and was sentenced to twenty years of incarceration, execution suspended after ten years, and three years of probation. On that date, he met with a probation officer and signed the standard conditions of probation form, which provided in part that the defendant was not to "violate any criminal laws of the United States, this state or any other state." In addition, the following information was handwritten at the bottom of the form: "Probation Begins Upon Discharge. Contact Prob. Dept. IMMEDIATELY upon Release."[3]

---

[1] The defendant does not dispute the court's factual findings set forth in its memorandum of decision denying his motions to dismiss.

[2] See *North Carolina* v. *Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

[3] The handwritten notation also contained the address and telephone number of the probation department.

During his incarceration, the defendant was convicted of three additional offenses[4] and was sentenced to an additional twenty-three months of incarceration to be served consecutive to the sentence imposed on April 4, 1986. The defendant was incarcerated continuously from July 9, 1985,[5] to August 6, 1996, when he was released from the commissioner's custody. On August 26, 1996, the defendant met with a probation officer, reviewed the conditions of probation and again signed the conditions of probation form.

On April 9, 1998, defendant was arrested at his residence pursuant to a warrant charging him with assault in the first degree and carrying a weapon without a permit. While they were in the defendant's apartment, police officers saw in plain view a loaded nine millimeter handgun, a rifle, a shotgun and marijuana, which the defendant admitted were his. Thereafter, on June 17, 1998, Donna Smith Odei, an adult probation officer, completed and signed an affidavit in support of an application for a warrant to arrest the defendant for violation of probation pursuant to General Statutes § 53a-32.[6]

---

[4] The defendant was convicted of one count of assault in the third degree and two counts of possession of a weapon in a correctional institution.

[5] The defendant was incarcerated, serving a prior six month sentence at the time he was sentenced on April 4, 1986.

[6] General Statutes § 53a-32 provides in relevant part: "(a) At any time during the period of probation or conditional discharge, the court or any judge thereof may issue a warrant for the arrest of a defendant for violation of any of the conditions of probation or conditional discharge, or may issue a notice to appear to answer to a charge of such violation, which notice shall be personally served upon the defendant. . . . [U]pon an arrest by warrant as herein provided, the court shall cause the defendant to be brought before it without unnecessary delay for a hearing on the violation charges. At such hearing the defendant shall be informed of the manner in which he is alleged to have violated the conditions of his probation or conditional discharge, shall be advised by the court that he has the right to retain counsel and, if indigent, shall be entitled to the services of the public defender, and shall have the right to cross-examine witnesses and to present evidence in his own behalf.

"(b) If such violation is established, the court may . . . (4) revoke the sentence of probation or conditional discharge. If such sentence is revoked,

Odei attested to the circumstances surrounding the defendant's April 9, 1998 arrest and that the defendant had violated the terms of his probation by violating the criminal law of this state, namely, committing assault in the first degree and carrying a pistol or revolver without a permit. A Superior Court judge found probable cause on the grounds alleged in the affidavit to issue a warrant for the defendant's arrest. The defendant subsequently was arrested on June 25, 1998.

The defendant pleaded not guilty to the charge of violation of probation and requested a revocation hearing. On November 20, 1998, the state filed a substitute information charging the defendant with violation of probation for possession of a pistol in violation of General Statutes § 53a-217 and possession of marijuana in violation of General Statutes § 21a-279 (c). The court continued the revocation hearing to permit the defendant to respond to the amended information. The state provided the defendant with the necessary discovery materials.

The revocation hearing was held on December 22 and 30, 1998. On December 22, 1998, the defendant filed two motions to dismiss the charge of violation of probation. The basis of one of the defendant's motions to dismiss was his claim that at the time he was arrested on June 28, 1998, he had completed the term of probation imposed on April 4, 1986. In his second motion to dismiss, the defendant claimed that the state impermissibly amended the information on the charge of probation violation. The court denied both motions to dismiss, found that the defendant had violated the terms of probation and sentenced him to the suspended por-

the court shall require the defendant to serve the sentence imposed or impose any lesser sentence. . . . No such revocation shall be ordered, except upon consideration of the whole record and unless such violation is established by the introduction of reliable and probative evidence and by a preponderance of the evidence."

tion of his April 4, 1986 sentence of incarceration. The defendant appealed from the denial of his motions to dismiss.

I

The defendant first claims that the court improperly denied his motion to dismiss that was based on a claim that he had completed the probation portion of his April 4, 1986 sentence when the arrest warrant was issued on June 19, 1998. To resolve this claim, we must determine whether the court properly determined when the defendant's probation began. The court found that the defendant's probation began on August 6, 1996. We agree with the trial court.

The defendant claims, however, that his probation began on February 3, 1995, when he completed the ten year incarceration portion of the April 4, 1986 sentence.[7] In support of his position, the defendant cites the portion of General Statutes § 53a-31 (a) that provides: "A period of probation or conditional discharge commences on the day it is imposed, except that, where it is preceded by a sentence of imprisonment with execution suspended after a period of imprisonment set by the court, *it commences on the day the defendant is released from such imprisonment*." (Emphasis added.) The defendant seems to argue that a defendant can be

---

[7] The defendant relies factually on the testimony of Margo Gumkowski, a records specialist with the department of correction, given during direct examination for the defense:

"Q. Okay. Now, let me ask you this. You've indicated that [the defendant] discharged on this particular sentence, this ten year sentence on February 3, 1995. Is that correct?

"A. Yes, sir.

"Q. Now, he did not get released from the department of correction at that time. Is that correct?

"A. That is correct.

"Q. And why is that, ma'am?

"A. He had some consecutive terms that were handed down to him that he had to serve."

*released,* as that term is used in § 53a-31 (a), when he completes one sentence that is followed by a consecutive sentence, even though he is not physically released from custody. On the basis of his interpretation of the law, the defendant concludes that by the time the arrest warrant for violation of probation was issued in June, 1998, he had completed his three years of probation.

He further asserts that it was improper for the court to rely exclusively on *State* v. *McFarland*, 36 Conn. App. 440, 651 A.2d 285 (1994), cert. denied, 232 Conn. 916, 655 A.2d 259 (1995). *McFarland* held that "the term release as used in General Statutes § 53a-31 includes physical release from custody, whether by mistake or not, and that probation commences by operation of law on the date of the actual release from imprisonment." Id., 448. The defendant claims that by relying on *McFarland*, the court failed to consider *State* v. *Strickland*, 39 Conn. App. 722, 667 A.2d 1282 (1995), cert. denied, 235 Conn. 941, 669 A.2d 577 (1996). The defendant argues that *Strickland* and General Statutes § 53a-31 (c)[8] support his position.

The state argues in opposition that the defendant's probation commenced on August 6, 1996, when he was released from the custody of the commissioner after he had served the three consecutive sentences that were imposed while the defendant was serving the prison sentence imposed on April 4, 1986. See footnote 4. Under the state's theory, the defendant was therefore still on probation when the court issued the violation

---

[8] General Statutes § 53a-31 (c) provides: "In any case where a person who is under a sentence of probation or of conditional discharge is also under an indeterminate sentence of imprisonment, or a sentence authorized under section 18-65a or 18-73, imposed for some other offense by a court of this state, the service of the sentence of imprisonment shall satisfy the sentence of probation or of conditional discharge unless the sentence of probation or of conditional discharge is revoked prior to parole or satisfaction of the sentence of imprisonment."

of probation arrest warrant. It is also the state's position that the court properly concluded that *McFarland* controls and the defendant's reliance on *Strickland* and § 53a-31 (c) is misplaced.

We first address our standard of review. "A trial court may continue or revoke the sentence of probation or conditional discharge or modify or enlarge the conditions, and, if such sentence is revoked, require the defendant to serve the sentence imposed or impose any lesser sentence. . . . In making this determination, the trial court is vested with broad discretion. . . . In this case, however, an issue of law must be determined before any question of discretion is reached. The court's legal conclusion that the defendant was subject to a charge of violation of probation is subject to our plenary review. . . . The issue is capable of resolution because there is an undisputed factual record." (Citations omitted; internal quotation marks omitted.) *State* v. *McFarland*, supra, 36 Conn. App. 444.

The defendant claims that completion of that portion of the sentence on which his probation was based constitutes *release*, despite his continued incarceration for the crimes of which he was convicted while in prison. The holding in *McFarland* pertains to *physical release* from custody. In that case, the defendant was mistakenly released from prison prior to the completion of his term of incarceration due to a miscalculation of the time served. Under his original conviction, the *McFarland* defendant was to serve a period of probation after he completed his imprisonment. After his mistaken release, the defendant was arrested and charged with additional crimes. In an effort to avoid conviction for violation of probation, the defendant argued that he could not be on probation because he had not served his entire prison sentence. Id., 441–42. On appeal, this court held that release from custody includes not only release from prison at the time a sentence of incarcera-

tion is concluded but also physical release that may have come about as the result of a miscalculation of the time served.[9] The decision's rationale is that the defendant is not in the custody of the commissioner of correction under either circumstance.

*McFarland* stands for the proposition that the statutory term *release* means "physical release from custody." In that case, even where the sentence had not been completed, the defendant's physical release from custody triggered the commencement of probation.

*Strickland* is distinguishable from the facts here because the defendant in that case, who had been released from custody and placed on probation for previous crimes, was incarcerated after being convicted of separate crimes. His probation was not revoked at that time. *State* v. *Strickland*, supra, 39 Conn. App. 724–25. The *Strickland* defendant argued that he could not simultaneously be on probation and incarcerated. We disagreed, concluding that it is possible for a defendant to be both incarcerated and on probation at the same time as the result of separate convictions. Id., 726–27. We held also that a probation term cannot be suspended or tolled once it has commenced. Id., 731. In *Strickland*, consecutive terms of imprisonment were imposed on the defendant *after* he had begun the term of a prior probation sentence. His probation did not stop upon his reincarceration. Here, unrelated consecutive sentences were imposed on the defendant *before* he completed the incarceration portion of his April 4, 1986 sentence. Although probation may continue during a period of incarceration, it does not commence pursuant

---

[9] Moreover, in our analysis in *McFarland*, we observed that "the word 'release' has been interpreted by our Supreme Court in other contexts to connote a physical release from confinement or imprisonment. See *State* v. *Hanson*, 210 Conn. 519, 556 A.2d 1007 (1989)." *State* v. *McFarland*, supra, 36 Conn. App. 447.

to § 53a-31 (a) unless the defendant is released from imprisonment.

The defendant's reliance on § 53a-31 (c) is unavailing. That subsection applies to "any case where a person . . . is under a sentence of probation," and here the court determined that the defendant's probation had not yet commenced when he was serving the additional sentences.

For the reasons stated, the court properly determined that the defendant was on probation at the time the court issued the arrest warrant for violation of probation.

II

In a second claim, the defendant maintains that the court improperly denied his motion to dismiss the violation of probation charge because the state may not amend an information to allege a different factual basis for the violation of probation charge than that contained in the affidavit in support of the arrest warrant. We are not persuaded.

The defendant argues that because probation is strictly a creature of statute, authority to initiate revocation proceedings must be found in the statute creating the procedures for the violation of probation.[10] Practice Book § 43-29[11] provides three methods for initiating vio-

---

[10] The defendant cites General Statutes § 53a-32 as the statutory basis of Practice Book § 43-29.

[11] Practice Book § 43-29 provides: "In cases where the revocation of probation is based upon a conviction for a new offense and the defendant is before the court or is being held in custody pursuant to that conviction, the revocation proceeding may be initiated by a motion to the court by a probation officer and a copy thereof shall be delivered personally to the defendant. *All other proceedings for revocation of probation shall be initiated by an arrest warrant supported by an affidavit or by testimony under oath showing probable cause to believe that the defendant has violated any of the conditions of the defendant's probation* or his or her conditional discharge or by a written notice to appear to answer to the charge of such violation, which notice, signed by a judge of the superior court, shall be personally served upon the defendant by a probation officer and contain a statement

lation of probation proceedings. The defendant concedes that the violation of probation proceeding against him was properly initiated because he was arrested in accordance with a warrant supported by an affidavit alleging that he violated a condition of probation by violating a law of this state.

In her affidavit in support of the arrest warrant, Odei attested that the defendant violated the terms of his probation by committing assault in the first degree and carrying a pistol or revolver without a permit. The defendant, however, was not convicted of those crimes. He therefore takes issue with the long form information filed on November 18, 1998, that alleges that the defendant violated § 53a-32 by having a pistol and marijuana in his possession.[12] The defendant contends that the only valid way in which he can be charged with violating probation for the crimes contained in the long form information is for a new arrest warrant to be issued or by using one of the other methods approved by Practice Book § 43-29. He concludes that because of the absence of a new arrest warrant for violation of probation, the court should have granted his motion to dismiss.[13]

The defendant's position is more stringent than the procedures required in a criminal prosecution. A proba-

of the alleged violation. All proceedings thereafter shall be in accordance with the provisions of Sections 3-6, 3-9 and 37-1 through 38-23. At the revocation hearing, the prosecuting authority and the defendant may offer evidence and cross-examine witnesses. If the defendant admits the violation or the judicial authority finds from the evidence that the defendant committed the violation, the judicial authority may make any disposition authorized by law. The filing of a motion to revoke probation under this section shall interrupt the period of the sentence as of the date of filing until a final determination as to revocation has been made by the judicial authority." (Emphasis added.)

[12] The defendant concedes that the preponderance of the evidence introduced at the revocation hearing established that he had committed the substituted offenses.

[13] The defendant does not claim that his constitutional rights to notice of the charges against him were violated by the substitution of the original grounds for violation.

tion revocation proceeding established by § 53a-32 is akin to a civil proceeding. *State* v. *Davis*, 229 Conn. 285, 295, 641 A.2d 370 (1994). "[A]lthough a [probation] revocation proceeding must comport with the requirements of due process, it is not a criminal proceeding. . . . It therefore does not require all of the procedural components associated with an adversary criminal proceeding." (Citations omitted; internal quotation marks omitted.) Id.

It is beyond question that in a criminal proceeding, the state may change the factual basis supporting a criminal count prior to trial. See Practice Book § 36-17.[14] If substantive amendments are permissible prior to trial in a criminal proceeding, then surely our legislature did not intend to prohibit them prior to a hearing in a probation revocation proceeding. Because it was permissible for the state to amend the factual basis of the defendant's alleged probation violation, the court properly denied the defendant's motion to dismiss.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[14] Practice Book § 36-17 provides: "If the trial has not commenced, the prosecuting authority may amend the information, or add additional counts, or file a substitute information. Upon motion of the defendant, the judicial authority, in its discretion, may strike the amendment or added counts or substitute information, if the trial or the cause would be unduly delayed or the substantive rights of the defendant would be prejudiced."