******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# STATE OF CONNECTICUT *v.* SHAKEE S. GALBERTH
## (AC 38633)

Sheldon, Beach and Mihalakos, Js.

*Syllabus*

The defendant appealed to this court following the trial court's denial of his motion to dismiss his violation of probation charge. In November, 2002, the defendant pleaded guilty to the sale of a narcotic substance, and was sentenced to fifteen years of imprisonment, execution suspended after six years, followed by three years of probation. In April, 2005, he was granted parole with a maximum release date in September, 2007, but, in April, 2006, while on parole, the defendant was arrested for additional narcotics offenses. He pleaded guilty to the 2006 charges, and was incarcerated from October, 2006, to July, 2012. In December, 2012, the defendant was again arrested and charged with four additional counts of the sale of a narcotic substance. In January, 2013, a warrant was issued for the defendant's arrest on the ground that he had violated his probation, and, the following month, he was arrested and charged with violation of probation. Subsequently, the defendant filed a motion to dismiss the violation of probation charge on the ground that he was not legally on probation in 2013 when the violation of probation warrant was executed, based on his arrest on the 2012 narcotics charges. The trial court denied the defendant's motion to dismiss, and after the defendant's plea of nolo contendere to the charge of violation of probation, this appeal followed. *Held*:

1. The defendant could not prevail on his claim that the trial court did not have subject matter jurisdiction over the probation violation proceeding because he was not on probation at the time the warrant for his arrest for violation of probation was executed or at the time of the subsequent hearing on his motion to dismiss: the court's jurisdiction over the probation revocation proceeding was derived from the defendant's original criminal proceeding in 2002, and the probationary period imposed as part of the 2002 sentence was at issue before the court, and therefore the trial court had jurisdiction over the defendant's subsequent violation of probation charge.

2. The defendant could not prevail on his claim that the trial court improperly denied his motion to dismiss the violation of probation charge because he had completed the three year probationary portion of his 2002 sentence prior to his arrest on the 2012 narcotics charges, which formed the basis of the arrest warrant for the violation of probation: pursuant to statute (§ 53a-31 [a]), a defendant cannot be released from imprisonment for the purposes of commencing his probationary period until he is no longer in the custody of the Commissioner of Correction, and a defendant on parole is not functionally released from imprisonment, and because the defendant here was in the continuous custody of the Commissioner of Correction for an extended period of time due to his incarceration for additional narcotics offenses committed in 2006 while he was on parole, the defendant did not commence his probation until he was released from custody in July, 2012, and, therefore, he did not complete the probationary portion of his 2002 sentence prior to January, 2013, when the arrest warrant for the violation of probation was issued.

Argued May 25—officially released August 29, 2017

*Procedural History*

Information charging the defendant with violation of probation, brought to the Superior Court in the judicial district of Fairfield, geographical area number two, where the court, *Cradle, J.*, denied the defendant's motion to dismiss; thereafter, the defendant was presented to the court on a conditional plea of nolo contendere; judgment of guilty in accordance with the plea, from which the defendant appealed to this court.

*Affirmed.*

*Edward G. McAnaney*, assigned counsel, for the appellant (defendant).

*Harry Weller*, senior assistant state's attorney, with whom, on the brief, were *John C. Smriga*, state's attorney, *Jonathan M. Sousa*, former special deputy assistant state's attorney, and *Marc R. Durso*, senior assistant state's attorney, for the appellee (state).

*Opinion*

MIHALAKOS, J. The defendant, Shakee S. Galberth, appeals following the trial court's denial of his motion to dismiss his violation of probation charge. On appeal, the defendant claims that the trial court (1) did not have subject matter jurisdiction over the probation violation proceeding, and (2) improperly denied his motion to dismiss because his probationary period had expired. We disagree with the defendant and, accordingly, affirm the judgment of the trial court.

The following facts and procedural history are relevant to our review. On November 20, 2002, the defendant pleaded guilty to three counts of the sale of a narcotic substance in violation of General Statutes § 21a-277 (a)[1] and was sentenced to fifteen years of imprisonment, execution suspended after six years, followed by three years of probation (2002 sentence). On April 29, 2005, he was granted parole with a maximum release date of September 7, 2007.[2] On April 18, 2006, while on parole, the defendant was arrested for several more narcotics offenses (2006 charges). He pleaded guilty to the 2006 charges and was sentenced to an additional eighty-one months of incarceration, to run concurrently with the remainder of his 2002 sentence. His probationary period from the 2002 sentence was not addressed by the court. He was incarcerated from October 2, 2006, to July 20, 2012. On July 24, 2012, he signed the document containing the conditions of his probation, and his probationary period began. Subsequently, on December 7, 2012, while on probation, the defendant was arrested and charged with four counts of the sale of a narcotic substance (2012 charges). On January 29, 2013, the Office of Adult Probation, pursuant to General Statutes § 53a-32,[3] obtained a warrant for the defendant's arrest on the ground that he had violated his probation. Thereafter, the defendant was arrested and charged with violating his probation.

The defendant was arraigned on the December, 2012 charges on February 6, 2013, and on the violation of probation charge on February 7, 2013. At his arraignment on the violation of probation charge, a question arose between the defendant and the state about whether the defendant's probation under the 2002 sentence had terminated prior to his arrest on the 2012 charges. Thereafter, the defendant filed a motion to dismiss the violation of probation charge on the ground that he was not legally on probation at the time of the execution of the violation of probation warrant on January 29, 2013, which was based on the defendant's arrest on the 2012 narcotics charges. The defendant did not challenge the trial court's subject matter jurisdiction at that time, and the trial court did not rule on jurisdictional matters. Arguments were heard on November 4, 2013, and the trial court denied the motion to dismiss in a written memorandum of decision. Subsequently,

the defendant entered a conditional plea of nolo contendere on the violation of probation charge, reserving his right to appeal from the denial of his motion to dismiss. Upon agreement between the defendant and the state that he would serve only one half of his remaining nine years, the defendant was sentenced to four and one-half years of imprisonment on July 3, 2014, to be served concurrently with the sentence imposed for his 2012 narcotics charges. This appeal followed. Additional facts will be set forth as necessary.

I

The defendant first claims that the trial court did not have subject matter jurisdiction over the probation violation proceeding because he was not on probation at the time the warrant for his arrest for violation of probation was executed or at the time of the hearing on his motion to dismiss. Specifically, he argues that his probationary period concluded no later than November 19, 2011, and therefore he was not on probation at the time of the 2012 narcotics charges, which formed the basis of his violation of probation. Accordingly, he argues, the court lacked subject matter jurisdiction over the probation violation proceeding. We disagree.

We first set forth our standard of review. "[B]ecause [a] determination regarding a trial court's subject matter jurisdiction is a question of law, our review is plenary." (Internal quotation marks omitted.) *Arriaga* v. *Commissioner of Correction*, 120 Conn. App. 258, 261, 990 A.2d 910 (2010), appeal dismissed, 303 Conn. 698, 36 A.3d 224 (2012). "Subject matter jurisdiction involves the authority of a court to adjudicate the type of controversy presented by the action before it. . . . A court does not truly lack subject matter jurisdiction if it has competence to entertain the action before it. . . . Once it is determined that a tribunal has authority or competence to decide the class of cases to which the action belongs, the issue of subject matter jurisdiction is resolved in favor of entertaining the action. . . . It is well established that, in determining whether a court has subject matter jurisdiction, every presumption favoring jurisdiction should be indulged." (Citations omitted; internal quotation marks omitted.) *Amodio* v. *Amodio*, 247 Conn. 724, 727–28, 724 A.2d 1084 (1999).

"Article fifth, § 1 of the Connecticut constitution proclaims that '[t]he powers and jurisdiction of the courts shall be defined by law' "; *State* v. *Carey*, 222 Conn. 299, 305, 610 A.2d 1147 (1992); and General Statutes § 51-164s provides in relevant part that "[t]he Superior Court shall be the sole court of original jurisdiction for all causes of action, except such actions over which the courts of probate have original jurisdiction, as provided by statute. . . ." "Because [r]evocation is a continuing consequence of the original conviction from which probation was granted . . . and the inherent authority to convict and sentence a defendant flows

from the authority to adjudicate a criminal cause of action, the subject matter jurisdiction over a probation revocation proceeding derives from the original presentment of the information." (Citation omitted; internal quotation marks omitted.) Id., 306.

In the present case, the trial court's subject matter jurisdiction derived from the defendant's original criminal proceeding in 2002, in which he was convicted of the sale of narcotics. As part of his 2002 sentence, a probationary period was imposed, and it is this probationary period that is at issue. Therefore, the trial court maintained subject matter jurisdiction over the defendant's subsequent violation of probation charge.

II

The defendant next claims that the trial court improperly denied his motion to dismiss the violation of probation charge because his probationary period had expired. Specifically, the defendant argues that he had completed the probationary portion of his 2002 sentence prior to his arrest on the 2012 charges, which formed the basis of the arrest warrant for the violation of probation, because his probation commenced following his maximum release date of September 7, 2007, as stipulated by the parties and after he was physically released from prison, and terminated three years later, on September 7, 2010. The state argues that, because the defendant was charged in 2006 while on parole for the 2002 sentence, the start of his probation was delayed. Specifically, the state claims that the defendant's probationary period was delayed until he was released from incarceration on July 20, 2012. The trial court found that the defendant began his probation on the 2002 sentence after he was released from custody on July 20, 2012. We agree with the trial court.

At the outset, we must distinguish between the effects of parole and probation on the status of the defendant. Pursuant to General Statutes § 54-125a (a),[4] a defendant who received a definite sentence or total effective sentence of more than two years may be approved to be released on parole at the discretion of the Board of Pardons and Paroles to serve out the remainder of his custodial sentence in the community. If released on parole, the defendant is not considered released from custody or imprisonment. Section 54-125a (g) indicates that "[a]ny person released on parole under this section *shall remain in the custody of the Commissioner of Correction* and be subject to supervision by personnel of the Department of Correction during such person's period of parole." (Emphasis added.)

"The rights of an individual on [parole] are unique in that they lie somewhere between those of a [probationer] and those of an incarcerated inmate . . . . [S]upervision of the [parolee] continues to be vested in the [D]epartment of [C]orrection, as it is for someone

who is incarcerated. . . . Conversely, a probationer is subject to judicial control and the court has the freedom to modify or enlarge the conditions of probation if necessary. . . . Clearly the situations of a prisoner on [parole] and a person on probation are different. The legislature has set out separate schemes of treatment with different consequences of not complying with the established conditions. It is in keeping with these schemes that a violation of probation cannot occur until the probationary period has begun." (Citations omitted; internal quotation marks omitted.) *State* v. *Deptula*, 34 Conn. App. 1, 10, 639 A.2d 1049 (1994). In the present case, when the defendant was physically released from prison in 2005, he was on parole. Therefore, he was still under the custody of the Commissioner of Correction at the time of the 2006 charges. Consequently, his probationary period did not begin until he was released from the custody of the Commissioner of Correction on July 20, 2012.

Having resolved the distinctions between probation and parole, we now set forth our standard of review. "A trial court may continue or revoke the sentence of probation or conditional discharge or modify or enlarge the conditions, and, if such sentence is revoked, require the defendant to serve the sentence imposed or impose any lesser sentence. . . . In making this determination, the trial court is vested with broad discretion. . . . [H]owever, an issue of law must be determined before any question of discretion is reached. The court's legal conclusion that the defendant was subject to a charge of violation of probation is subject to our plenary review." (Internal quotation marks omitted.) *State* v. *Outlaw*, 60 Conn. App. 515, 522, 760 A.2d 140 (2000), aff'd, 256 Conn. 408, 772 A.2d 1122 (2001).

Pursuant to General Statutes § 53a-31 (a), "[a] period of probation or conditional discharge commences on the day it is imposed, unless the defendant is imprisoned, in which case it commences on the day the defendant is *released* from such imprisonment."[5] (Emphasis added.) As previously determined by this court, "the term release as used in . . . § 53a-31 includes physical release from custody . . . and . . . probation commences by operation of law on the date of the actual release from imprisonment." (Internal quotation marks omitted.) *State* v. *Outlaw*, supra, 60 Conn. App. 521. "Although probation may continue during a period of incarceration, it does not commence pursuant to § 53a-31 (a) unless the defendant is released from imprisonment." Id., 523–24.[6]

Our holding in *Outlaw* is controlling in the present case. In *Outlaw*, the defendant was sentenced to a period of twenty years of incarceration, execution suspended after ten years, followed by three years of probation. Id., 517. The defendant was continuously incarcerated from July 9, 1985, to August 6, 1996. Id.,

518. During his incarceration he was convicted of three additional offenses for which "unrelated consecutive sentences were imposed on [him] before he completed the incarceration portion of his [first] sentence." (Emphasis omitted.) Id., 518, 523.[7] His probation would have begun on February 3, 1995, but he was incarcerated until August 6, 1996, on the additional offenses. Id., 518, 520 and n.7. Because the defendant in *Outlaw* was not released from custody until August 6, 1996, after all his sentences had been served, this court held that the defendant did not begin his probationary period for the 1985 sentence until he was released from incarceration in 1996. Id., 523–24.

Similarly, in the present case, the defendant was continuously in the custody of the Commissioner of Correction, whether incarcerated or on parole, until his release in 2012. He was granted parole on April 29, 2005, and would have remained in the custody of the Commissioner of Correction while on parole until his maximum release date of September 7, 2007. Had he successfully completed his parole, the defendant would have then begun his three years of probation on September 7, 2007. His arrest in 2006, however, interrupted his parole because he was subsequently convicted and incarcerated on the 2006 charges. Although the defendant was no longer physically incarcerated beginning on April 29, 2005, he was not released from the custody of the Commissioner of Correction, and, therefore, his probation did not commence. To hold that the defendant could serve the entirety of his probationary period while incarcerated would lead to results that would undermine the purposes of and distinctions between the probation and parole statuses.[8]

Because a defendant cannot be released from imprisonment for the purposes of commencing his probationary period under § 53a-31 (a) until he is no longer in the custody of the Commissioner of Correction, and our case law has determined that one on parole has not functionally been "released from imprisonment," we conclude that the defendant did not commence his probation until he was released from custody on July 20, 2012. Accordingly, the trial court properly determined that the defendant was on probation at the time that the arrest warrant for the violation of probation was issued on January 29, 2013, and properly denied the motion to dismiss.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] General Statutes § 21a-277 (a) provides in relevant part: "Any person who manufactures, distributes, sells, prescribes, dispenses, compounds, transports with the intent to sell or dispense, possesses with the intent to sell or dispense, offers, gives or administers to another person any controlled substance which is a hallucinogenic substance other than marijuana, or a narcotic substance . . . shall be imprisoned not more than fifteen years . . . ."

[2] The parties stipulated to a maximum release date of September 7, 2007, taking into account the sentence credit that the defendant received for time

served while on bond and awaiting disposition of the 2002 case.

[3] General Statutes § 53a-32 (a) provides in relevant part: "At any time during the period of probation . . . the court or any judge thereof may issue a warrant for the arrest of a defendant for violation of any of the conditions of probation . . . ."

[4] General Statutes § 54-125a (a) provides in relevant part: "A person convicted of one or more crimes who . . . received a definite sentence or total effective sentence of more than two years, and who has been confined under such sentence or sentences for not less than one-half of the total effective sentence . . . may be allowed to go at large on parole . . . if (A) it appears from all available information . . . that there is a reasonable probability that such inmate will live and remain at liberty without violating the law, and (B) such release is not incompatible with the welfare of society."

[5] The defendant's reliance on § 53a-31 (b) is misplaced. General Statutes § 53a-31 (b) provides in relevant part: "The issuance of a warrant or notice to appear . . . for violation pursuant to section 53a-32 shall interrupt the period of the sentence until a final determination as to the violation has been made by the court." The defendant claims that the 2006 arrest did not toll the running of his period of probation. This court has held that "[p]ursuant to . . . § 53a-31 (b), the running of the probationary period is tolled where the revocation is commenced pursuant to the provisions of . . . § 53a-32." (Emphasis omitted.) *State* v. *Egan*, 9 Conn. App. 59, 73, 514 A.2d 394, cert. denied, 201 Conn. 811, 516 A.2d 886 (1986). In the present case, the issue is not whether the defendant's probationary period was tolled by his 2006 arrest, but rather whether the probationary period began to run in the first place. Because the defendant's probationary period did not commence until he was released from imprisonment in 2012, § 53a-31 (b) is inapplicable.

[6] See *State* v. *Strickland*, 39 Conn. App. 722, 727, 667 A.2d 1282 (1995) (holding that it was possible for defendant to be concurrently in custody and on probation as result of separate convictions), cert. denied, 235 Conn. 941, 669 A.2d 577 (1996). Those facts, however, are not present in this case.

[7] It is not pertinent for the purposes of this analysis that the defendant's 2006 sentence ran concurrent to his 2002 sentence, as opposed to running consecutively as in the *Outlaw* case. This court's analyses in *Outlaw* and *McFarland* indicate that whether the defendant is in the custody of the Commissioner of Correction is the key consideration in determining whether the defendant has been released for the purposes of § 53a-31 (a). See *State* v. *Outlaw*, supra, 60 Conn. App. 523 ("[t]he [*McFarland*] decision's rationale is that the defendant is not in the custody of the commissioner of correction under either circumstance"); see also *State* v. *McFarland*, 36 Conn. App. 440, 448, 651 A.2d 285 (1994) ("[w]e hold that the term release as used in . . . § 53a-31 includes physical release from custody . . . and that probation commences by operation of law on the date of the actual release from imprisonment"), cert. denied, 232 Conn. 916, 655 A.2d 259 (1995).

[8] See *State* v. *McFarland*, 36 Conn. App. 440, 446, 651 A.2d 285 (1994) ("Although penal statutes such as § 53a-31 et seq. are to be strictly construed in favor of the accused, such construction should not exclude common sense so that absurdity results and the evident design of the legislature is frustrated. . . . If two constructions of a statute are possible, we will adopt the one that makes the statute effective and workable, not the one leading to difficult and bizarre results." [Citation omitted.]), cert. denied, 232 Conn. 916, 655 A.2d 259 (1995).