## STATE OF CONNECTICUT *v.* B.B.*
### (SC 18481)

Rogers, C. J., and Norcott, Palmer, Zarella, McLachlan, Eveleigh and
Vertefeuille, Js.**

---

* In accordance with the spirit and intent of General Statutes §§ 54-76*l*
and 46b-142 (b) and Practice Book § 79-3, the name of the defendant in this
appeal is not disclosed. The records and papers of this case shall be open
for inspection only to persons having a proper interest therein and upon
order of the Appellate Court.

* * This appeal was originally argued before a panel of this court consisting
of Chief Justice Rogers, and Justices Norcott, Katz, Palmer, McLachlan,
Eveleigh and Vertefeuille. Thereafter, Justice Katz resigned from this court
and did not participate in the consideration or decision of the case, and
Justice Zarella was added to the panel. Justice Zarella has read the record
and briefs, listened to a recording of the oral argument and participated in
the resolution of this case.

Argued October 25, 2010—officially released May 10, 2011

*Martin Zeldis,* public defender, with whom was *Janet Perrotti,* assistant public defender, for the appellant (defendant).

*James M. Ralls,* senior assistant state's attorney, with whom, on the brief, were, *Michael Dearington,* state's attorney, and *Karen Roberg,* assistant state's attorney, for the appellee (state).

*Marsha L. Levick* filed a brief for the Center for Children's Advocacy et al., as amici curiae.

*Opinion*

McLACHLAN, J. The defendant, B.B., appeals[1] from the decision of the trial court, which granted the state's

---

[1] The Chief Justice granted the defendant's application for certification to appeal from the trial court's interlocutory ruling pursuant to General Statutes § 52-265a (a), which authorizes the Chief Justice to certify a direct appeal from the Superior Court to the Supreme Court "in an action which involves a matter of substantial public interest and in which delay may work a substantial injustice . . . ." We concluded in *Laurel Park, Inc.* v. *Pac,*

motion to transfer the defendant's case from the youthful offender docket to the regular criminal docket, pursuant to General Statutes § 54-76c (b) (1).[2] The defendant contends that the trial court improperly granted the state's motion to transfer his case to the regular criminal docket, without first holding a hearing on the motion, in violation of his right to due process under the federal constitution. We conclude that § 54-76c (b) requires a hearing on the adult docket prior to the finalization of the transfer of a case from the youthful offender docket to the regular criminal docket, that this statutory requirement satisfies due process, and that neither § 54-76c (b) (1) nor due process entitles the defendant to a hearing before the court on the youthful offender docket. Accordingly, we affirm the judgment of the trial court.

The record reveals the following undisputed facts and procedural history. On July 7, 2009, at the age of sixteen, the defendant, B.B., was arrested and charged with one count of possession of a weapon in a motor vehicle in violation of General Statutes § 29-38 (a). On July 8, 2009, the defendant was arraigned on the youth-

194 Conn. 677, 679 n.1, 485 A.2d 1272 (1984), that "the 'order or decision' referred to in § 52-265a from which an appeal may be taken need not be a final judgment . . . ."

The defendant also filed an interlocutory appeal in the Appellate Court challenging the trial court's order granting the state's motion to transfer, but he withdrew that appeal after the Chief Justice granted the defendant's application for certification to appeal. We, therefore, do not decide whether an order granting a motion to transfer a case from the youthful offender docket to the regular criminal docket pursuant to § 54-76c (b) (1) satisfies the final judgment rule and may be appealed immediately.

[2] General Statutes § 54-76c (b) (1) provides in relevant part: "Upon motion of the prosecuting official and order of the court, the case of any defendant who is a youth and is charged with the commission of a felony, other than a felony set forth in subsection (a) of this section, shall be transferred from the youthful offender docket to the regular criminal docket of the Superior Court, provided the court finds that there is probable cause to believe the defendant has committed the act for which he or she is charged. . . ."

ful offender docket and the trial court determined that there was probable cause for his arrest.

Subsequently, the state moved to transfer the matter to the regular criminal docket pursuant to § 54-76c (b) (1). The defendant objected to the transfer and argued that due process entitled him to a hearing before his case could be transferred.[3] The trial court granted the state's motion to transfer the defendant's case to the regular criminal docket, concluding that it did not have discretion pursuant to § 54-76c (b) (1), to deny the state's motion to transfer. The court concluded that the statute vested sole discretion with the prosecutor and that the failure to provide for a hearing on the youthful offender docket did not violate due process. This appeal followed.

The defendant claims that the trial court improperly granted the state's motion to transfer because he has a liberty interest in his status as a defendant on the youthful offender docket, and due process therefore entitles him to a hearing prior to transfer of his case to the regular criminal docket.[4] Although we agree with the defendant that he has a liberty interest in his status as a defendant on the youthful offender docket, we conclude that the failure to hold a hearing prior to the

[3] In the alternative, the defendant contended that if the statute mandated that the court grant the state's motion to transfer, it violated the separation of powers doctrine. The trial court disagreed. On appeal, the defendant renews this claim. Because we conclude that the court has discretion before the finalization of the defendant's transfer to the adult docket, the prosecutor does not have sole discretion over the grant of a motion to transfer. Thus, it is unnecessary to reach the issue of whether the statute violates the separation of powers doctrine.

[4] Because the defendant's primary argument is that due process entitles him to a hearing before removal of youthful offender status, we first address the issue of constitutional interpretation. Notably, the defendant does not clearly articulate any claim that § 54-76c (b) (1) entitles him to a hearing. Moreover, he concedes that "there is much in the legislative history that could lead to the conclusion that the legislature did not intend [to provide] judicial discretion . . . ."

transfer did not deprive him of his right to due process. The defendant's due process right is satisfied by the requirement in § 54-76c (b) of a hearing before the court on the regular criminal docket prior to the finalization of the transfer.

The constitutionality of a statute presents a question of law over which our review is plenary. See, e.g., *Rodriguez* v. *Testa*, 296 Conn. 1, 7, 993 A.2d 955 (2010); *Honulik* v. *Greenwich*, 293 Conn. 641, 668, 980 A.2d 845 (2009) (*Katz, J.*, dissenting). The fourteenth amendment provides in relevant part that "[n]o State shall . . . deprive any person of life, liberty or property, without due process of law . . . ." U.S. Const., amend. XIV, § 1. In order to prevail on a fourteenth amendment due process claim the defendant must allege: (1) a liberty or property right protected by the fourteenth amendment; and (2) that the deprivation of that interest contravened due process. See *Mathews* v. *Eldridge*, 424 U.S. 319, 332–33, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976); *Fleming* v. *Bridgeport*, 284 Conn. 502, 529, 935 A.2d 126 (2007). "Due process analysis begins with the identification of the interests at stake. Liberty interests protected by the [f]ourteenth [a]mendment may arise from two sources—the [d]ue [p]rocess [c]lause itself and the laws of the [s]tates." (Internal quotation marks omitted.) *State* v. *Rupar*, 293 Conn. 489, 503, 978 A.2d 502 (2009).

Any liberty interest in status as a defendant on the youthful offender docket in this state results only from statutory authority.[5] "Any [special treatment] accorded

[5] The state claims that the right to due process only applies when a court exercises meaningful discretion to deny statutory benefits. In support of this argument, the state cites *Giaimo* v. *New Haven*, 257 Conn. 481, 508, 778 A.2d 33 (2001), in which we addressed "the general question of whether an *applicant* for a government benefit, as opposed to an actual *recipient*, has a protected property interest in the benefit." (Emphasis in original.) In the present case, however, the defendant is not an applicant; he is a presumptive youthful offender and receives youthful offender status when he satisfies the statutory definition of a youthful offender. In other words, the defendant is presumed to have a vested liberty interest, and he cannot be divested of

to a juvenile because of his [or her] age with respect to proceedings relative to a criminal offense *results from statutory authority, rather than from any inherent or constitutional right."* (Emphasis in original; internal quotation marks omitted.) *State* v. *Angel C.*, 245 Conn. 93, 104, 715 A.2d 652 (1998); see also *State* v. *Skakel*, 276 Conn. 633, 658, 888 A.2d 985, cert. denied, 549 U.S. 1030, 127 S. Ct. 578, 166 L. Ed. 2d 428 (2006) (to extent that defendant possesses liberty interest in juvenile status, "that interest derives from, and is limited by, the statutory provisions governing the transfer, adjudication and commitment of juveniles").

"[O]nce a state provides its citizens with certain statutory rights beyond those secured by the constitution itself, the constitution forbids the state from depriving individuals of those statutory rights without due process of law." (Internal quotation marks omitted.) *State* v. *Matos*, 240 Conn. 743, 749, 694 A.2d 775 (1997). In light of the significant benefits of adjudication as a juvenile rather than as an adult, we concluded in *State* v. *Fernandes*, 300 Conn. 104, 111, 123, 12 A.3d 925 (2011), that juveniles charged with class C and class D felonies have a liberty interest in their juvenile status. As we explained in *State* v. *Fernandes*, supra, 123, these types of benefits "were the focus of the United States Supreme Court in *Kent* v. *United States*, 383 U.S. 541, 86 S. Ct. 1045, 16 L. Ed. 2d 84 (1966), which we have interpreted as holding 'that if a statute vests a juvenile with the right to juvenile status, then that right constitutes a liberty interest, of which the juvenile may not be deprived without due process; i.e., notice and a hearing.' "

For similar reasons, we conclude that a youth charged with the commission of a crime other than

his interest without due process of law. *Giaimo* is therefore distinguishable because it discusses whether an interest has vested, not whether the right to due process applies.

those enumerated in § 54-76c (a) has a liberty interest in his status as a defendant on the youthful offender docket. There are substantial benefits in that status. If confined, a defendant on the youthful offender docket has the right to be segregated from other defendants over the age of eighteen years before and during trial and before sentencing. General Statutes § 54-76h. In addition, a defendant on the youthful offender docket is eligible to receive a more lenient sentence. General Statutes § 54-76j. A youthful offender is not considered a criminal, and a determination that one is a youthful offender is not deemed a criminal conviction. General Statutes § 54-76k. Finally, the records and proceedings of a defendant on the youthful offender docket are kept confidential and are erased when the youthful offender attains twenty-one years of age, provided he has not been convicted of a felony subsequent to being adjudicated a youthful offender. General Statutes §§ 54-76*l* and 54-76o.

The defendant must demonstrate not only that status as a defendant on the youthful offender docket confers benefits on him, but also that he is entitled to the status. In other words, he must demonstrate "that the state statute creates a right to treatment" as a youthful offender or "creates a justifiable expectation that such treatment will be afforded to [him]." (Internal quotation marks omitted.) *State* v. *Angel C.*, supra, 245 Conn. 120. General Statutes § 54-76b explains when the status vests. Section 54-76c (a) provides that when a youth is charged with the commission of a crime that is not excluded, and he does not fall under any of the other exceptions, the youth presumptively is entitled to status as a defendant on the youthful offender docket. Specifically, § 54-76c (a) provides in relevant part: "In any case where an information or complaint has been laid charging a defendant with the commission of a crime, and where it appears that the defendant is a youth,

such defendant shall be *presumed* to be eligible to be adjudged a youthful offender . . . ." (Emphasis added.) Accordingly, once a "youth" is charged with a crime other than one of those enumerated as ineligible in § 54-76c (a), he presumptively has status as a defendant on the youthful offender docket and has a vested liberty interest in that status. By contrast, § 54-76c (a) expressly excludes certain youths from status as defendants on the youthful offender docket. For example, youths who are charged with the commission of a class A felony or previously have been adjudged a serious juvenile offender, are excluded from the youthful offender docket.

Because it is undisputed that at the time of the offense, the defendant met the statutory definition of a "youth" and was charged with the commission of a crime that does not fall within one of the exclusions set forth in § 54-76c (a), the defendant in the present case has a liberty interest in his status and cannot be deprived of that status without due process of law, namely, notice and a hearing.[6]

---

[6] The state claims that a defendant cannot hold youthful offender status, or have any vested benefits, unless he has been adjudicated a youthful offender. In support of its claim, the state relies on the language in § 54-76c (a), which provides that a defendant on the youthful offender docket "shall be presumed to be *eligible to be adjudged* a youthful offender . . . ." (Emphasis added.) The state contends that because the defendant is only presumed to be *eligible* to be adjudged a youthful offender, the benefits that he may enjoy if adjudged a youthful offender have not yet vested. The state's argument misconstrues the nature of the status at issue in the present case. That status is defined as being a member of a group of citizens who have been granted "certain statutory rights beyond those secured by the constitution itself . . . ." (Internal quotation marks omitted.) *State* v. *Matos*, supra, 240 Conn. 749. Defendants on the youthful offender docket gain significant benefits well before they are adjudicated youthful offenders. For example, although the state argues that a defendant has no vested benefits unless he has been adjudged a youthful offender, it concedes that § 54-76h (a) grants confidentiality once a defendant is charged as a presumptive youthful offender. The state dismisses this benefit as a mere administrative convenience and relies upon *State* v. *Angel C.*, supra, 245 Conn. 110, in which we stated that the "initiation of proceedings in the juvenile court is

Having determined that due process requires that the defendant be afforded notice and a hearing in connection with the transfer of his case, we must determine whether § 54-76c (b) (1) provides for the constitutionally required notice and hearing. That issue presents a question of statutory construction, over which we exercise plenary review, guided by well established principles regarding legislative intent. See *Hicks* v. *State*, 297 Conn. 798, 800, 1 A.3d 39 (2010) (explaining plain meaning rule under General Statutes § 1-2z and setting forth process for ascertaining legislative intent).

As directed by § 1-2z, we begin with the language of § 54-76c (b) (1), which provides in relevant part that "[u]pon motion of the prosecuting official and order of the court, the case of any defendant who is a youth and is charged with the commission of a felony, other than a felony set forth in subsection (a) of this section, shall be transferred from the youthful offender docket to the regular criminal docket of the Superior Court, provided the court finds that there is probable cause to believe the defendant has committed the act for which he or she is charged. The defendant shall be arraigned in the regular criminal docket of the Superior Court by the next court business day following such transfer, provided any proceedings held prior to the finalization of such transfer shall be private and shall be conducted in such parts of the courthouse or the building wherein court is located as shall be separate and apart from the other parts of the court which are

exclusively for administrative purposes and . . . nothing substantive occurs or can occur while the case is temporarily on the juvenile docket." *Angel C.*, however, involved a juvenile who was subject to an automatic transfer to the regular criminal docket, not a defendant on the youthful offender docket, subject to transfer only upon motion of the prosecutor and order of the court. Id., 96. In addition, the confidentiality benefit conferred by § 54-76h (a) is clearly more than a mere administrative convenience; it is one of the most significant benefits conferred upon defendants on the youthful offender docket.

then being held for proceedings pertaining to adults charged with crimes. The file of any case so transferred shall remain sealed until the end of the tenth working day following such arraignment, unless the prosecuting official has filed a motion pursuant to subdivision (2) of this subsection, in which case such file shall remain sealed until the court makes a decision on the motion."

The initial language of § 54-76c (b) (1) sets forth three conditions that must be satisfied before a case may be transferred from the youthful offender docket to the regular criminal docket: the prosecutor must file a motion seeking the transfer; the court must have found that probable cause exists; and the court must order the transfer. Considered in isolation, this portion of § 54-76c (b) (1) is silent as to whether the "order of the court" is simply ministerial—that is, a grant of the transfer compelled by the prosecutor's motion and the finding of probable cause—or permits the court to exercise discretion and to entertain argument as to whether the motion for transfer *should* be granted.

When construing a statute, however, "we read [the statute] as a whole . . . so as to reconcile all parts as far as possible." (Internal quotation marks omitted.) *Brown & Brown* v. *Blumenthal*, 297 Conn. 710, 734, 1 A.3d 21 (2010). "[I]n determining the meaning of a statute . . . we look not only at the provision at issue, but also to the broader statutory scheme to ensure the coherency of our construction." (Internal quotation marks omitted.) *State* v. *Fernando A.*, 294 Conn. 1, 21, 981 A.2d 427 (2009). In addition, because "[i]t is a basic tenet of statutory construction that the legislature [does] not enact meaningless provisions," we must construe § 54-76c (b) "if possible, such that no clause, sentence or word shall be superfluous, void or insignificant." (Internal quotation marks omitted.) *American Promotional Events, Inc.* v. *Blumenthal*, 285 Conn. 192, 203, 937 A.2d 1184 (2008). Accordingly, in

determining whether § 54-76c (b) (1) requires a pretransfer hearing, we consider the entire text of § 54-76c (b) (1) as well as (b) (2).

After § 54-76c (b) (1) sets forth the conditions necessary for transfer, it mandates that until the transfer has been finalized, any proceedings must be conducted confidentially, in an area that is separate from the area where adult proceedings are held, and the case must remain sealed. In addition, subdivision (2) of § 54-76c (b) provides in relevant part that "[a] prosecuting official may, not later than ten working days after such arraignment, file a motion to transfer the case of any defendant who is a youth and is charged with the commission of a felony, other than a felony set forth in subsection (a) of this section, from the regular criminal docket of the Superior Court to the youthful offender docket . . . . The court sitting for the regular criminal docket of the Superior Court shall, after hearing and not later than ten working days after the filing of such motion, decide such motion." As a whole, then, § 54-76c (b) contains three components: (1) the procedures for transferring a case to the regular criminal docket; (2) protective measures that remain in place until transfer is finalized; and (3) a mechanism for returning the case to the youthful offender docket. When we consider all three components together, as we must, it becomes clear that if the legislature had intended for § 54-76c (b) to require a *pretransfer* hearing, presumably to argue the merits and propriety of transfer, there would have been no need for protective measures *after* transfer, for a return mechanism, or for a hearing to debate the issue. The second and third components of § 54-76c (b) make it possible to return to the youthful offender docket without the protections attendant to that docket having been compromised. If the legislature had intended for the merits of transfer to be argued on the youthful offender docket, there would have been no

need for the second and third components. Because such a construction would render the second and third components meaningless, we conclude that § 54-76c (b) (1) does not require notice and a hearing before a case may be transferred from the youthful offender docket to the regular criminal docket.

In addition, when we consider the text of § 54-76c (b) (1) with the text of § 54-76c (b) (2), the absence of any mention of a hearing or any discretion on the part of the court in subdivision (1) of the statute further compels the conclusion that subdivision (1) does not permit the court to hold a hearing prior to ordering the transfer to the criminal docket or to deny the prosecutor's motion. Under well established rules of statutory construction, "[w]here a statute, with reference to one subject contains a given provision, the omission of such provision from a similar statute concerning a related subject . . . is significant to show that a different intention existed." (Internal quotation marks omitted.) *State* v. *Fernando A.*, supra, 294 Conn. 21. The language of subdivision (2) of § 54-76c (b), which specifically requires the court to hold a hearing if the prosecutor files a motion to return the case to the youthful offender docket and permits the court to decide the motion, stands in stark contrast to the text of subdivision (1), which conspicuously lacks any similar language.

Although § 54-76c (b) (2) does provide for a hearing, that hearing is triggered only upon the prosecutor's motion seeking such transfer. It does not appear that § 54-76c (b) (2) in any way *entitles* a defendant transferred from the youthful offender docket to the regular criminal docket to a hearing before that transfer is finalized. As we have set forth, due process requires that defendants on the youthful offender docket must be provided with notice and a hearing before they are divested of their youthful offender status. Therefore, any construction of § 54-76c (b) that concludes that

defendants on the youthful offender docket are *not* entitled to notice and a hearing in connection with such a transfer would render the statute unconstitutional. "Ordinarily, [i]f literal construction of a statute raises serious constitutional questions, we are obligated to search for a construction that will accomplish the legislature's purpose without risking the statute's invalidity. . . . That adjudicative technique, however, presumes that an alternative, constitutional interpretation remains available." (Citation omitted; internal quotation marks omitted.) *Roth* v. *Weston*, 259 Conn. 202, 233, 789 A.2d 431 (2002).

We also have recognized, however, that "it is not unprecedented for the judiciary in exceptional circumstances to delineate a procedural scheme for the protection of constitutional rights where statutory protections fall short or are nonexistent." (Internal quotation marks omitted.) Id., 234. In *State* v. *Fernandes*, supra, 300 Conn. 112, we construed an analogous statute, General Statutes (Rev. to 2005) § 46b-127 (b), to provide for a hearing following the transfer of a case from the juvenile docket to the regular criminal docket, but prior to the finalization of the transfer. Consistent with our conclusion in *Fernandes*, we construe § 54-76c (b) to require that a defendant transferred from the youthful offender docket to the regular criminal docket be provided with notice and a hearing in connection with the defendant's transfer, prior to the finalization of the transfer.

We note that both the juvenile and youthful offender statutory schemes involve the administration of justice for young people, meaning people under the age of eighteen, and take an approach different from that taken for adults. By providing for a different justice system based on the age of the defendant, the statutes recognize the inherent differences between young people and adults. The United States Supreme Court, in *Roper* v. *Simmons*, 543 U.S. 551, 569–74, 125 S. Ct. 1183,

161 L. Ed. 2d 1 (2005), a decision outlawing the death penalty for defendants younger than eighteen years of age, reflected on many of the factors associated with creating a separate criminal justice system for young people. The decision set forth numerous differences between juveniles under eighteen and adults justifying disparate treatment.

In *Graham* v. *Florida*, 560 U.S. 48, 68, 130 S. Ct. 2011, 176 L. Ed. 2d 825 (2010), which held that the eighth amendment forbids the sentence of life without parole for a juvenile offender who did not commit a homicide, the United States Supreme Court reviewed its rationale in *Roper* and found that "[n]o recent data provide reason to reconsider the [c]ourt's observations in *Roper* about the nature of juveniles. . . . [D]evelopments in psychology and brain science continue to show fundamental differences between juvenile and adult minds. For example, parts of the brain involved in behavior control continue to mature through late adolescence."

In view of the United States Supreme Court's recognition of the "general differences" between young people and adults in *Roper* and *Graham*, it would be extraordinary if § 54-76c (b) did not require the exercise of due process implied in the phrase "finalization of such transfer . . . ." Moreover, the final transfer of a case from the youthful offender docket to the regular criminal docket without a hearing would be inconsistent with the United States Supreme Court's treatment of young people in *Kent* v. *United States*, supra, 383 U.S. 562, in which it concluded that a juvenile is entitled to a hearing that "measure[s] up to the essentials of due process and fair treatment."

Because we are obligated to search for a construction that accomplishes the legislature's purpose without risking the statute's invalidity, we conclude that § 54-

76c (b) implicitly requires a hearing by the court on the regular criminal docket prior to finalization of a transfer of a case from the youthful offender docket.[7] The transfer procedures, therefore, are compatible with the essentials of due process.

In the present case, although the defendant was not provided with a hearing by the court on the youthful offender docket, the transfer of his case to the regular criminal docket has not yet been finalized. Consistent with due process requirements, before that occurs, the defendant is entitled to a hearing before the court on the regular criminal docket, at which the defendant can be heard and the court can decide whether the transfer shall be finalized.

The judgment is affirmed.

In this opinion ROGERS, C. J., and NORCOTT, ZARELLA and VERTEFEUILLE, Js., concurred.

EVELEIGH, J., with whom PALMER, J., joins, concurring. I concur in the result reached by the majority. I, however, believe that the phrase "order of the court" as set forth in General Statutes § 54-76c (b) (1) is ambiguous, and that it is necessary to consult the legislative history in order to determine the legislature's intent regarding the necessity of a hearing in the youthful offender court prior to the transfer of a felony case to the regular criminal docket of the Superior Court. I further believe that the legislative history regarding § 54-76c (b) (1) is manifestly clear that the legislature did not intend the youthful offender to have any hearing

---

[7] Our conclusion that § 54-76c (b) requires a hearing by the court on the regular criminal docket, not the youthful offender docket, is consistent with our determination in State v. Fernandes, supra, 300 Conn. 128, that General Statutes (Rev. to 2005) § 46b-127 (b) provides for a hearing before the judge of the criminal court docket prior to finalization of a transfer of a case from the juvenile docket to the regular criminal docket.

in the youthful offender court. In view of my dissent in *State* v. *Fernandes*, 300 Conn. 104, 129, 12 A.3d 925 (2011), however, I disagree with the majority to the extent that any part of the majority opinion supports the reasoning and conclusion in *Fernandes*.

I performed the same analysis in the present case as I did in *Fernandes*, wherein the issue presented involved the transfer of class C, class D and unclassified felonies from the juvenile court to the regular criminal docket of the Superior Court pursuant to General Statutes (Rev. to 2005) § 46b-127 (b). The relevant language necessitating an "order of the court" in both § 54-76c (b) (1) and General Statutes (Rev. to 2005) § 46b-127 (b) is identical. In my view, however, the legislative history in *Fernandes* is very different than the legislative history in this case. In *Fernandes*, I concluded that the legislative history, inter alia, dictated that a juvenile court judge had discretion to either authorize or deny a transfer of a class C, class D or unclassified felony. See *State* v. *Fernandes*, supra, 300 Conn. 130 (*Eveleigh, J.*, dissenting). The majority did not agree with my analysis. In this case, however, the legislative history is so clear to the effect that no such hearing was contemplated, and that the judge sitting in the youthful offender court was not to have discretion regarding the transfer, that I agree with the majority's conclusion. See 48 H.R. Proc., Pt. 25, 2005 Sess., pp. 7616–17, remarks of Representative Michael P. Lawlor (In introducing Public Acts 2005, No. 05-323, on the floor of the House of Representatives, Representative Lawlor stated that, if the state wanted to transfer a case to the adult criminal docket, "the prosecutors . . . would have unbridled discretion to exercise that option for all felony charges. . . . And, in those cases, a prosecutor would be able to treat that case as an adult case no questions asked, no ability of a [j]udge or anyone else to block that from actually taking place."). In light of my disagreement with *Fer-*

*nandes* and the majority's reliance on it in the present case, however, I cannot support the entirety of the majority opinion. For this reason I concur in the result.