******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

DHATI COLEMAN *v.* COMMISSIONER
OF CORRECTION
(AC 46627)

Bright, C. J., and Westbrook and Eveleigh, Js.*

*Syllabus*

The petitioner, who had been convicted of possession of narcotics with intent to sell, appealed, on the granting of certification, from the habeas court's judgment dismissing his petition for a writ of habeas corpus. The petitioner claimed that the court improperly concluded that it lacked subject matter jurisdiction because he was not in the custody of the respondent, the Commissioner of Correction, when he filed his petition one month after completing the conditional discharge portion of his sentence while in federal custody on unrelated charges. *Held*:

The habeas court properly dismissed the petition for lack of subject matter jurisdiction, as the petitioner's period of conditional discharge had commenced by operation of law pursuant to statute (§ 53a-31 (a)) when he completed the incarceration portion of his sentence while in federal custody, and, despite his claim that the period of conditional discharge never commenced pursuant to § 53a-31 (a) because he remained continuously in either federal or state custody since his arrest on the narcotics charge, this court concluded that "imprisonment" in § 53a-31 (a) unambiguously referred only to state imprisonment and did not encompass federal imprisonment.

Argued September 12, 2024—officially released March 11, 2025

*Procedural History*

Amended petition for a writ of habeas corpus, brought to the Superior Court in the judicial district of Tolland, where the court, *Bhatt, J.*, rendered judgment dismissing the petition, from which the petitioner, on the granting of certification, appealed to this court. *Affirmed.*

*Judie Marshall*, assigned counsel, for the appellant (petitioner).

*Alexander A. Kambanis*, deputy assistant state's attorney, with whom, on the brief, were *John P. Doyle*,

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

*Jr.*, state's attorney, and *Craig P. Nowak*, supervisory assistant state's attorney, for the appellee (respondent).

*Opinion*

BRIGHT, C. J. The petitioner, Dhati Coleman, appeals, following the granting of his petition for certification to appeal, from the judgment of the habeas court dismissing his petition for a writ of habeas corpus for lack of subject matter jurisdiction. On appeal, the petitioner claims that the court improperly concluded that he was not in custody as a result of the conviction that he sought to challenge when the petition was filed. We disagree and, accordingly, affirm the judgment of the habeas court.

The following facts, either as found by the habeas court or as undisputed in the record, and procedural history are relevant to our resolution of this appeal. On September 9, 2014, the petitioner was arrested in New Haven and charged with possession of narcotics with intent to sell. The petitioner entered the custody of the respondent, the Commissioner of Correction, on September 10, 2014. On October 15, 2014, while incarcerated, the petitioner was arrested for a pending escape charge in Hartford pursuant to a warrant. On December 4, 2014, he pleaded guilty to escape in the first degree in Hartford (Hartford conviction) and was sentenced to serve one year of incarceration, execution suspended after six months, followed by one day of conditional discharge. On December 23, 2014, the petitioner pleaded guilty pursuant to the *Alford* doctrine[1] to the possession of narcotics charge in New Haven (New Haven conviction) and was sentenced to serve

---

[1] "A defendant who pleads guilty under the *Alford* doctrine does not admit guilt but acknowledges that the state's evidence against him is so strong that he is prepared to accept entry of a guilty plea. See generally *North Carolina* v. *Alford*, 400 U.S. 25, 37, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970)." *Love* v. *Commissioner of Correction*, 223 Conn. App. 658, 663 n.3, 308 A.3d 1040, cert. denied, 348 Conn. 958, 310 A.3d 960 (2024).

seven years of incarceration, execution suspended after two years, followed by three years of conditional discharge. The sentence was ordered to run concurrently with his sentence on the Hartford conviction.

On September 25, 2015, the petitioner was indicted on federal charges and transferred to federal custody, where he continued to serve his sentence on the New Haven conviction. In January, 2016, the petitioner pleaded guilty in the federal case,[2] and he was "discharged from [the respondent's] custody on November 10, 2016, having satisfied the incarceration portions of his [state] sentences." On December 29, 2016, a federal court sentenced the petitioner to thirty-two months of incarceration to be served consecutively to his New Haven conviction.[3]

On August 30, 2017, the petitioner was returned to Connecticut pursuant to the Interstate Agreement on Detainers, General Statutes § 54-186 et seq., to resolve pending state charges against him.[4] *State* v. *Coleman*, 199 Conn. App. 172, 176, 235 A.3d 655, cert. denied, 335 Conn. 966, 240 A.3d 281 (2020). On June 1, 2018, the

[2] "That indictment, handed up in the United States District Court for the District of Maine, charged him with the knowing and intentional distribution of a controlled substance." *United States* v. *Coleman*, 884 F.3d 67, 70 (1st Cir. 2018).

[3] The federal court "gave effect to an amended sentencing stipulation entered into between the parties, which authorized a time-served credit of [twenty-three] months (referable to the [petitioner's] Connecticut conviction) for a sentence served on relevant conduct." (Internal quotation marks omitted.) *United States* v. *Coleman*, 884 F.3d 67, 70–71 (1st Cir. 2018).

[4] "The purpose of the [Interstate Agreement on Detainers] is to establish a cooperative procedure for disposition of charges against a prisoner in one state who is wanted to respond to untried criminal charges in another state. . . . [It] is activated when the state seeking the prisoner (the receiving state) files written notice that he is wanted to answer charges in that state. This notice, referred to as a detainer, is simply a notification filed with the institution in which the prisoner is serving a sentence, advising that he is wanted to face pending criminal charges in another jurisdiction." (Citation omitted; internal quotation marks omitted.) *State* v. *Smith*, 57 Conn. App. 478, 481–82, 749 A.2d 67 (2000).

defendant resolved the outstanding state charges by entering conditional pleas of nolo contendere to assault in the first degree, robbery in the first degree, and criminal possession of a firearm. Id., 178. On August 9, 2018, the court imposed "a total effective sentence of nine years [of] incarceration, followed by five years of special parole, and ordered that [the petitioner] receive credit for jail time he had served since August 30, 2017, the date that he was returned to Connecticut to face the charges in [that] case." Id., 179. The petitioner was returned to federal custody, and he completed his federal sentence on March 8, 2019.

On December 18, 2019, the petitioner filed the underlying habeas petition challenging his New Haven conviction. In the operative amended petition dated December 20, 2022, the petitioner alleged that his counsel provided ineffective assistance in connection with his *Alford* plea. The respondent filed a return and asserted as a special defense that the petitioner had waived any claims of ineffective assistance of counsel arising from his plea deal. The petitioner filed a reply denying the respondent's special defense of waiver, and the matter proceeded to trial.

At the start of the trial, the habeas court questioned whether it had jurisdiction to consider the petition because it appeared that the petitioner was not in custody as a result of the New Haven conviction. The court provided the parties an opportunity to file briefs addressing the jurisdictional issue, though only the petitioner filed a brief on the issue. The petitioner argued that, because he had remained continuously in either state or federal custody since he was arrested on September 9, 2014, his period of conditional discharge arising from the New Haven conviction never commenced within the meaning of General Statutes § 53a-31 (a), and, therefore, he still was in custody on that conviction.

The court was not persuaded and dismissed the petition for lack of subject matter jurisdiction. In its memorandum of decision, the court began its analysis with the text of § 53a-31 (a), which provides in relevant part that "[a] period of probation or conditional discharge commences on the day it is imposed, unless the defendant is imprisoned, in which case it commences on the day the defendant is released from such imprisonment. . . ." The court noted that, pursuant to General Statutes § 18-84,[5] "inmate" and "prisoner" include "any person in the custody of the" respondent and that "correctional institution," "state prison," "community correctional center" or "jail" mean "a correctional facility administered by the" respondent. General Statutes § 1-1 (w).[6] The court then briefly reviewed the relevant case law regarding § 53a-31 (a), from which the court distilled that, "in order for a period of probation or conditional discharge to commence, the person must no longer be under the supervision or control of [the respondent] either by being in a Connecticut jail or on parole."

On the basis of the foregoing analysis, the court determined that the petitioner "was no longer serving any Connecticut sentence—and thus no longer subject to the custody and control of [the department]—from November 10, 2016. As of that day, he was 'released from *such* imprisonment' and deemed to have satisfied the incarceration portion of any sentence he was serving. After that day, [the respondent] did not have any authority over [the petitioner] until he reentered [the respondent's] custody on November 1, 2017. However,

---

[5] General Statutes § 18-84 provides: "The terms 'inmate' and 'prisoner', as used in this title and sections 54-125 to 54-129, inclusive, and 54-131, include any person in the custody of the Commissioner of Correction or confined in any institution or facility of the Department of Correction until released from such custody or control, including any person on parole."

[6] General Statutes § 1-1 (w) provides that " 'Correctional institution', 'state prison', 'community correctional center' or 'jail' means a correctional facility administered by the Commissioner of Correction."

that means that the period of conditional discharge legally began to run on November 10, 2016. Given our case law, it was not tolled or stopped when [the petitioner] reentered [the respondent's] custody in 2017. It continued to run until it expired three years later on or about November 10, 2019. He was not charged with a violation of conditional discharge. Thus, the conditional discharge was satisfied and expired on or about November 10, 2019. The petition was filed on December 18, 2019, a month after [the petitioner] discharged the [New Haven] sentence in its entirety. Thus, he was not in 'custody' for jurisdictional purposes. The petition must, therefore, be dismissed." (Emphasis in original.) The habeas court granted the petitioner's petition for certification to appeal, and this appeal followed.

On appeal, the petitioner claims that the court misconstrued § 53a-31 (a) in concluding that his period of conditional discharge commenced while he remained imprisoned on a federal conviction. The petitioner argues that, because he has been imprisoned continuously since his arrest in September, 2014, he was never "released from such imprisonment" and, therefore, his period of conditional discharge never commenced pursuant to § 53a-31. We are not persuaded.

We begin our analysis with the relevant legal principles regarding a habeas court's jurisdiction and the applicable standard of review. "General Statutes § 52-466 (a) (1) provides in relevant part that '[a]n application for a writ of habeas corpus . . . shall be made to the superior court, or to a judge thereof, for the judicial district in which the person whose custody is in question is claimed to be illegally confined or deprived of such person's liberty.' It is well established that, for a court to have jurisdiction to entertain a habeas petition seeking to challenge the legality of a criminal conviction, the petitioner must be in the custody of the respondent *as the result of that conviction* at the time that

the petition is filed." (Emphasis in original.) *Goguen* v. *Commissioner of Correction*, 341 Conn. 508, 528, 267 A.3d 831 (2021). Both our Supreme Court and this court "consistently [have] construed the custody requirement in § 52-466 to require a petitioner [to] be in custody on the conviction under attack at the time the habeas petition is filed, and that the collateral consequences of an expired conviction, such as deportation, are insufficient to render a petitioner in custody within the meaning of the statute." (Footnote omitted; internal quotation marks omitted.) *Jobe* v. *Commissioner of Correction*, 334 Conn. 636, 653, 224 A.3d 147 (2020); see also *Richardson* v. *Commissioner of Correction*, 298 Conn. 690, 698, 6 A.3d 52 (2010); *McCarthy* v. *Commissioner of Correction*, 274 Conn. 557, 562–63, 877 A.2d 758 (2005); *Lebron* v. *Commissioner of Correction*, 274 Conn. 507, 530–31, 876 A.2d 1178 (2005), overruled in part on other grounds by *State* v. *Elson*, 311 Conn. 726, 91 A.3d 862 (2014); *Foote* v. *Commissioner of Correction*, 170 Conn. App. 747, 754–55, 155 A.3d 823, cert. denied, 325 Conn. 902, 155 A.3d 1271 (2017); *Fernandez* v. *Commissioner of Correction*, 139 Conn. App. 173, 179–80, 55 A.3d 588 (2012), cert. granted, 307 Conn. 947, 60 A.3d 960 (2013) (appeal withdrawn May 28, 2013).

"[W]hether the petitioner is in custody for purposes of a habeas petition implicates the habeas court's subject matter jurisdiction." *Pentland* v. *Commissioner of Correction*, 200 Conn. App. 296, 302, 238 A.3d 778, cert. denied, 335 Conn. 973, 241 A.3d 129 (2020). A determination regarding a habeas court's subject matter jurisdiction is a question of law over which we exercise plenary review. See id. In the present case, to determine whether the petitioner was in custody on the New Haven conviction at the time he filed the underlying habeas petition, we must determine whether the habeas court properly interpreted § 53a-31 (a), which also is

subject to our plenary review. See *Felder* v. *Commissioner of Correction*, 348 Conn. 396, 405, 306 A.3d 1061 (2024) (construction of statute subject to plenary review).

Pursuant to General Statutes § 1-2z, "[t]he meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." Accordingly, "we look not only at the provision at issue, but also to the broader statutory scheme to ensure the coherency of our construction. . . . In addition, because [i]t is a basic tenet of statutory construction that the legislature [does] not enact meaningless provisions, we must construe [§ 53a-31 (a)] if possible, such that no clause, sentence or word shall be superfluous, void or insignificant." (Citation omitted; internal quotation marks omitted.) *State* v. *B.B.*, 300 Conn. 748, 757, 17 A.3d 30 (2011). "Only if we determine that the statute is not plain and unambiguous or yields absurd or unworkable results may we consider extratextual evidence of its meaning such as the legislative history and circumstances surrounding its enactment . . . [and] the legislative policy it was designed to implement . . . . The test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation. . . . In determining whether the plain language of [a statute] leads to an absurd or unworkable result, we are limited to considering its plain language and its relationship to other statutes." (Citations omitted; internal quotation marks omitted.) *State* v. *Barnes*, 227 Conn. App. 760, 765, 323 A.3d 1166, cert. denied, 350 Conn. 922, 325 A.3d 1093 (2024).

"In construing § [53a-31 (a)], we do not write on a clean slate, but are bound by our previous judicial interpretations of this language and the purpose of the statute." (Internal quotation marks omitted.) *Boardwalk Realty Associates, LLC* v. *M & S Gateway Associates, LLC*, 340 Conn. 115, 126, 263 A.3d 87 (2021); see also *State* v. *Lopez*, 341 Conn. 793, 802, 268 A.3d 67 (2022) ("[w]e have previously construed the meaning of the [statutory] phrase . . . and are guided by that precedent"). "[A]though we draw on case law interpreting § [53a-31 (a)] that predates the enactment of § 1-2z, we still apply § 1-2z to the extent that those cases do not fully resolve the issues presented in this appeal." *Kasica* v. *Columbia*, 309 Conn. 85, 94 n.10, 70 A.3d 1 (2013).

We previously have concluded that "released from such imprisonment" in § 53a-31 (a) "includes physical release from custody . . . and that probation commences by operation of law on the date of the actual release from imprisonment." *State* v. *McFarland*, 36 Conn. App. 440, 448, 651 A.2d 285 (1994), cert. denied, 232 Conn. 916, 655 A.2d 259 (1995). In so concluding, we explained that "neither the judicial system nor the [D]epartment of [C]orrection has an affirmative duty to inform the defendant when probation commences because the termination of custody provides the demarcation between service of a sentence and the beginning of a probation period." Id., 446. In *State* v. *Strickland*, 39 Conn. App. 722, 728, 667 A.2d 1282 (1995), cert. denied, 235 Conn. 941, 669 A.2d 577 (1996), we further concluded "that once a period of probation has commenced, there is no statutory authority to suspend or toll that probation. A court may, however, allow a defendant's probation to continue during a period of incarceration for separate charges or may revoke probation if warranted. Id., 728–29. A person, therefore, can be in prison and on probation at the same time." *State* v.

*Moore*, 85 Conn. App. 7, 11–12, 855 A.2d 1006, cert. denied, 271 Conn. 937, 861 A.2d 510 (2004).

In *State* v. *Outlaw*, 60 Conn. App. 515, 760 A.2d 140 (2000), aff'd, 256 Conn. 408, 772 A.2d 1122 (2001), "the defendant's sentence of probation . . . was attached to a period of incarceration that was to be executed before probation commenced. Id., 517. While [he] was serving his initial period of imprisonment, he was convicted of various prison offenses, the sentences for which were to run consecutively to the original sentence. Id., 518." (Footnote omitted.) *State* v. *Moore*, supra, 85 Conn. App. 12. This court determined that, because "unrelated consecutive sentences were imposed on the defendant *before* he completed the incarceration portion of his [original] sentence," his probation did not commence until he completed those additional periods of incarceration. (Emphasis in original.) *State* v. *Outlaw*, supra, 523. We explained that, "[a]lthough probation may continue during a period of incarceration, it does not commence pursuant to § 53a-31 (a) unless the defendant is released from imprisonment." Id., 523–24.

We subsequently concluded that a period of probation must be "attached to a period of related incarceration" in *State* v. *Moore*, supra, 85 Conn. App. 12. In that case, the defendant was serving a one year sentence on a drug conviction when he pleaded guilty to a charge of burglary in the third degree. Id., 9. The court "sentenced the defendant to three years [of] imprisonment, execution suspended, with two years of probation" and stayed the commencement of the defendant's probation "until he was released from the one year sentence of imprisonment on the drug conviction." Id. After the defendant completed the one year sentence, he was arrested twice for drug possession, and the court found that, by virtue of those arrests, he had violated his probation. Id., 9–10. The court sentenced the defendant

to serve a portion of his three year suspended sentence, and the defendant appealed, claiming that "§ 53a-31 (a) mandates that a period of probation commence on the day the sentence is imposed and allows probation to be stayed only until the completion of incarceration for the same crime to which the probation applies." Id., 10. The state, in contrast, argued that, "pursuant to [this court's] holding in *State* v. *Outlaw*, [supra, 60 Conn. App. 515], a court may order a sentence of probation to commence after a defendant is released from prison." *State* v. *Moore*, supra, 12. This court agreed with the defendant in *Moore*, finding that *Outlaw* was distinguishable from *Moore* "because the defendant's sentence of probation in [*Outlaw*] was attached to a period of incarceration that was to be executed before probation commenced"; id.; whereas the defendant's term of probation in *Moore* "was not attached to a period of related incarceration." Id. Thus, we held that the sentencing court in *Moore* "misapplied § 53a-31 (a) when it attempted to stay [the defendant's] probation." Id., 13.

At the time these cases were decided, § 53a-31 (a) provided in relevant part that "[a] period of probation or conditional discharge commences on the day it is imposed, *except that, where it is preceded by a sentence of imprisonment with execution suspended after a period of imprisonment set by the court*, it commences on the day the defendant is released from such imprisonment. . . ." (Emphasis added.) General Statutes (Rev. to 1993) § 53a-31 (a). In 2015, the legislature amended this subsection. See Public Acts 2015, No. 15-211, § 1 (P.A. 15-211). Following that amendment, § 53a-31 (a) now provides that "[a] period of probation or conditional discharge commences on the day it is imposed, *unless the defendant is imprisoned, in which case it commences on the day the defendant is released from such imprisonment*. . . ." (Emphasis added.) Although P.A. 15-211 abrogated our holding in *State*

v. *Moore*, supra, 85 Conn. App. 12, by eliminating the requirement that the period of probation or conditional discharge be preceded by a sentence of imprisonment set by the court, it did not alter our precedent regarding the meaning of "released" in § 53a-31 (a).

Indeed, following P.A. 15-211, we reaffirmed our holdings in both *State* v. *Outlaw*, supra, 60 Conn. App. 523, and *State* v. *McFarland*, supra, 36 Conn. App. 448. See *State* v. *Galberth*, 175 Conn. App. 789, 170 A.3d 132 (2017). In *Galberth*, we explained that whether additional, unrelated sentences are ordered to run concurrently or consecutively to a defendant's original sentence "is not pertinent" to determining when a period of probation commences under § 53a-31 (a) because "[t]his court's analyses in *Outlaw* and *McFarland* indicate that whether the defendant is in the custody of the [respondent] is the key consideration in determining whether the defendant has been released for the purposes of § 53a-31 (a)." Id., 798 n.7.

Although this precedent involves the commencement of probation under § 53a-31 (a),[7] we conclude, and the parties agree, that the same principles apply to the commencement of a period of conditional discharge, which is addressed in tandem with probation throughout the relevant statutes. See General Statutes §§ 53a-28 through 53a-32. The parties disagree, however, as to whether "imprisoned" and "imprisonment" in § 53a-31 (a) include *federal* imprisonment.

The petitioner contends that, although our precedent "deals with additional periods of confinement in Connecticut, the reasoning nevertheless applies to the present case where the petitioner was confined federally."

---

[7] The most salient difference between the alternative dispositions is that a defendant who is serving a period of conditional discharge is subject to no supervision; whereas a defendant who is serving a period of probation is subject to supervision by the Office of Adult Probation. See General Statutes § 53a-29 (b) ("[t]he court may impose a sentence of conditional discharge for an offense . . . if it is of the opinion that . . . *probation supervision is not appropriate*" (emphasis added)).

He argues that § 53a-31 "provides appropriate context for interpretation of the phrase 'released from such imprisonment.' The statute refers to release from imprisonment. It does not refer to release from the custody of the [respondent], nor does it specify the Department of Correction, which would presumably refer to a Connecticut sentence. . . . It would have made specific reference to Connecticut custody had it intended for the statute to reference only a Connecticut period of incarceration."

Conversely, the respondent argues that, "[a]lthough § 53a-31 (a) does not explicitly limit 'imprisoned' to mean imprisonment as part of a sentence imposed by a Connecticut court, this limitation must be presumed" in accordance with our Supreme Court's holding in *Felder* v. *Commissioner of Correction*, supra, 348 Conn. 396, in which the court reasoned that, "[b]ecause state legislatures regulate state processes, we presume, particularly within a statutory scheme that governs how courts of this state handle habeas procedures, that, when the legislature refers to certain procedures, it is speaking about state procedures." (Emphasis omitted.) Id., 407. The respondent argues that, "[b]y extension, because our General Assembly is tasked solely with regulating Connecticut law, which includes defining crimes within the state of Connecticut and assigning certain corresponding punishments for said crimes, 'unless the defendant is imprisoned' as used in § 53a-31 (a) presumptively refers to imprisonment imposed by a Connecticut sentencing court." (Footnote omitted.)

In his reply brief, the petitioner argues that "*Felder* provides guidance for . . . whether a federal [habeas] petition constitutes a prior petition within the context of General Statutes § 52-470 to toll the statute of limitations for filing state habeas corpus petitions. The issue in this case can be distinguished, since it has nothing to do with the narrow issue of tolling a filing deadline.

. . . While the legislature may be referring to state [habeas corpus] procedures in the context of that case, the statute at issue [in *Felder*] is entirely different from the statute here. Further, the statute here refers neither to a state [n]or a foreign period of incarceration; presumably, the legislature would have specified if it had intended that meaning." (Citations omitted.) Notwithstanding the differences between the statutory schemes for habeas corpus and sentencing in criminal cases, we find the reasoning in *Felder* instructive and conclude that imprisonment under § 53a-31 (a) unambiguously refers only to state imprisonment.

In *Felder* v. *Commissioner of Correction,* supra, 348 Conn. 401, the petitioner was convicted of larceny in 2004, and the judgment denying his first state habeas petition challenging that conviction became final on May 9, 2012. "Pursuant to § 52-470 (d), the petitioner had until October 1, 2014, to file a second state habeas petition challenging the same conviction before the rebuttable presumption of untimeliness applied." Id. The petitioner filed a federal habeas petition challenging his 2004 conviction on April 30, 2012, which was denied, and the federal judgment became final on June 1, 2015. Id. In May, 2017, the petitioner filed a second state habeas petition challenging the same conviction, and the habeas court issued an order to show cause for the delay in filing the second petition after the October 14, 2014 deadline. Id., 402. At the ensuing evidentiary hearing, "[t]he petitioner's counsel argued that § 52-470 (d) does not expressly limit 'prior petition challenging the same conviction' to state habeas petitions, and, therefore, the phrase includes both prior state habeas petitions and prior federal habeas petitions challenging the same conviction." (Emphasis omitted.) Id., 403. "The habeas court dismissed the second state habeas petition, concluding that the presumption of unreasonable delay applied because the petitioner's interpretation of § 52-470 was inconsistent with the plain and

unambiguous language of the statute. The court also found that the petitioner had not established good cause to excuse the untimely second state habeas petition." Id., 404.

Upon the granting of certification, the petitioner appealed to this court, "which affirmed the judgment of the habeas court. . . . [We] concluded that the phrase 'prior petition' does not include federal habeas petitions . . . . On appeal to [our Supreme Court], the petitioner claim[ed] that [this court] erred in concluding that . . . a federal habeas petition is not a 'prior petition' as contemplated by § 52-470 (d) . . . ." (Citations omitted.) Id. He argued that "the unambiguous language of the statute" demonstrated that "prior petition" included both state and federal habeas petitions "because, if the legislature had intended to refer only to state habeas petitions, it would have more precisely stated so." Id., 404–405. Our Supreme Court disagreed, concluding that " 'prior petition' unambiguously refers only to prior state habeas petitions." Id., 405.

In so concluding, the court acknowledged that § 52-470 (d) does not specify whether it "refers solely to state habeas petitions"; id., 406; but it also observed "that silence does not necessarily equate to ambiguity." (Internal quotation marks omitted.) Id. Accordingly, in accordance with § 1-2z, the court examined the "challenged statutory language, not in isolation, but in relation to the text and statutes surrounding it." Id. The court reasoned that "[t]he meaning of the term 'prior petition' is elucidated by examining the text of § 52-470 generally, as well as the statute's placement within the General Statutes. The statute is contained within title 52, which governs civil actions brought in state court, and specifically within chapter 915, which establishes the procedural framework that applies to habeas petitions in our state courts. Chapter 915 contains the requirements a petitioner must follow when filing a

state habeas petition, including where it must be filed and what it must include. . . . This chapter also mandates the procedures for Superior Court judges to follow when certifying habeas petitions. . . . Finally, the chapter defines the circumstances that demand the summary disposal of a habeas petition and the procedures that our courts must employ to do so. . . .

"In each section of chapter 915, the legislature does not make explicit that it is referring solely to state habeas applications, proceedings, or petitions. Because state legislatures regulate state processes, we presume, particularly within a statutory scheme that governs how courts of this state handle habeas procedures, that, when the legislature refers to certain procedures, it is speaking about state procedures. Indeed, when the legislature intends to reference a federal procedure, it does so explicitly, or the context would necessarily imply it. . . . Thus, the statutory reference to 'application,' 'proceedings,' or 'petition' is a reference to a state habeas application, state habeas proceedings, or a state habeas petition.

"This is underscored by the language of § 52-466, which specifies that the application must be made to the Connecticut Superior Court. . . . Superior courts have jurisdiction over only state habeas petitions, whereas federal courts have jurisdiction over federal habeas petitions involving state judgments. . . . Additionally, in the provisions of chapter 915, the legislature provides the process by which judges of the Superior Court must handle habeas petitions filed in our state courts. The entire statutory scheme in which § 52-470 is placed deals exclusively with state habeas petitions. If the legislature had intended any portion of that statute to address federal habeas petitions, it would have specifically stated so, or the context would necessarily imply it. . . .

"In addition to its relationship with the general statutory scheme, it is also helpful to look to other subsections of § 52-470. . . . Section 52-470 contains several other references to 'petition,' each time indisputably referencing only state habeas petitions. . . . In each of these examples, the legislature has dictated the procedures for, and the treatment of, a 'petition' filed and adjudicated in the Superior Court. Because the legislature is empowered to dictate neither the procedures for federal habeas petitions nor when a federal court must dismiss a petition, it cannot be credibly maintained that these other references to 'petition' encompass federal habeas petitions. Reading the statute within the context of chapter 915 of the General Statutes and giving identical meaning to identical terms, we thus understand 'prior petition' in § 52-470 (d) to unambiguously refer only to state habeas petitions." (Citations omitted; emphasis omitted.) *Felder* v. *Commissioner of Correction*, supra, 348 Conn. 406–409.

The petitioner's attempts to distinguish the present case from *Felder* are unavailing. First, the fact that § 52-470 (d) concerns the tolling of a filing deadline, whereas § 53a-31 (a) does not, is a distinction without a difference, as the tolling of a filing deadline had no bearing on the court's reasoning in *Felder*. Second, although the petitioner contends that § 52-470 (d) "is entirely different from" § 53a-31 (a), he ignores the evident similarity between the statutes. That is, just as § 52-470 (d) does not specify whether it refers solely to state habeas petitions, § 53a-31 (a) also does not specify whether it refers solely to state imprisonment. Thus, as our Supreme Court concluded with regard to § 52-470 (d) in *Felder*, although § 53a-31 (a) does not expressly refer to *state* imprisonment, this silence does not render the statute ambiguous; instead, the meaning of "imprisonment" is "elucidated by examining the text of § [53a-31] generally, as well as the statute's placement within

the General Statutes." *Felder* v. *Commissioner of Correction*, supra, 348 Conn. 406.

Section 53a-31 (a) is codified in title 53a, the state Penal Code, in part II of chapter 952, which establishes the sentencing procedures for Connecticut courts and designates the authorized sentences that judges of the Superior Court may impose on defendants convicted of Connecticut offenses. Pursuant to § 53a-28 (a), "every person convicted of an offense shall be sentenced in accordance with this title." Section 53a-28 (b) sets forth the authorized sentences, which include "[a] term of imprisonment; or  . . .  a term of imprisonment, with the execution of such sentence of imprisonment suspended, entirely or after a period set by the court, and a period of probation or a period of conditional discharge  . . . ." General Statutes § 53a-29 (b) provides that "[t]he court may impose a sentence of conditional discharge for an offense . . . if it is of the opinion that: (1) Present or extended institutional confinement of the defendant is not necessary for the protection of the public; and (2) probation supervision is not appropriate." General Statutes § 53a-30 (a) sets forth various conditions that a court may order a defendant to comply with when imposing a sentence of probation or conditional discharge. Pursuant to General Statutes § 53a-38 (b), "[a] definite sentence of imprisonment commences when the prisoner is received in the custody to which he was sentenced." Section 53a-38 (d), in turn, provides that, "[w]hen a person who is serving a sentence of imprisonment escapes, the escape shall interrupt the sentence and such interruption shall continue until the return of such person to the custody of the Commissioner of Correction."

These statutes, although referencing the custody of the respondent, do not expressly reference state imprisonment or state court in every instance. Notwithstanding that legislative silence, however, we presume that

the legislature is speaking about state procedures in the part of our state Penal Code that establishes the authorized sentences and sentencing procedures for our state courts. "Indeed, when the legislature intends to reference a federal procedure, it does so explicitly, or the context would necessarily imply it." *Felder* v. *Commissioner of Correction*, supra, 348 Conn. 407. In addition to examples of express statutory references to federal procedures cited in *Felder*,[8] the legislature also has referenced expressly "federal offenses" and "federal correctional institution" in title 53a. See, e.g., General Statutes § 53a-40 (a) (defining persistent dangerous felony offender as person who, among other things, has been convicted of certain crimes and "*imprisoned* [for] more than one year . . . *in this state or in any other state or in a federal correctional institution*" (emphasis added)); General Statutes § 53a-46a (i) (setting forth aggravating factors for imposition of sentence for capital felony committed prior to April 25, 2012, including that "the defendant committed the offense after having been convicted of two or more state offenses or two or more *federal offenses*" (emphasis added)). These express references to imprisonment "in a federal correctional institution" and "federal offenses" demonstrate that the legislature knows how to convey its intent to include federal imprisonment. See *William W. Backus Hospital* v. *Stonington*, 349 Conn. 713, 726, 321 A.3d 1117 (2024) ("[i]t is a well settled principle of statutory construction that the legislature knows how

---

[8] "See, e.g., General Statutes § 3-10b (a) ('[t]he Governor is authorized to request the head of any *federal* department administering a grant-in-aid program under any *federal* law' . . .); General Statutes § 17b-3 (b) ('[t]he commissioner may enter into contracts with the *federal* government concerning the use and repayment of such funds under any such *federal* act' . . .); General Statutes § 17b-105f (a) ('[t]he program shall provide for the receipt of *federal* matching funds . . . for employment and training activities that qualify for such matching funds under *federal* law and regulations' . . .)." (Emphasis in original.) *Felder* v. *Commissioner of Correction*, supra, 348 Conn. 407.

to convey its intent expressly . . . or to use broader or limiting terms when it chooses to do so" (internal quotation marks omitted)). Consequently, if the legislature intended to include federal imprisonment within the ambit of § 53a-31 (a), it would have stated that intention expressly, as it does in other sections of title 53a.

As to the other subsections of § 53a-31, subsection (d) provides in relevant part that, "[i]n any case where a person who is under a sentence of probation or of conditional discharge is also under an indeterminate sentence of imprisonment . . . imposed for some other offense *by a court of this state*, the service of the sentence of imprisonment shall satisfy the sentence of probation or of conditional discharge . . . ." (Emphasis added.) The petitioner emphasizes that the legislature expressly references state imprisonment in subsection (d)[9] and argues that, because "[t]he legislature did not make such a specification with respect to the phrase 'released from [such] imprisonment' [in § 53a-31 (a)], we must presume that it would have done so if that was its intent." We are not persuaded that the juxtaposition of the reference to "by a court of this state" in subsection (d) of § 53a-31 with the omission of such a limitation in subsection (a) supports the petitioner's interpretation.

To be sure, "[w]hen a statute, with reference to one subject contains a given provision, the omission of such

[9] We note that subsection (d) of § 53a-31 applies only to a defendant serving an *indeterminate* sentence, which our legislature abolished in favor of definite sentencing in 1980. See *Mead* v. *Commissioner of Correction*, 282 Conn. 317, 325, 920 A.2d 301 (2007) (observing that No. 80-442 of the 1980 Public Acts "comprehensively revised this state's sentencing structure by abolishing indeterminate sentencing and creating definite sentencing"); see also General Statutes § 53a-35a ("[f]or any felony committed on or after July 1, 1981, the sentence of imprisonment shall be a definite sentence"). Under the indeterminate sentencing scheme in existence when § 53a-31 (d) was enacted, a determinate sentence of imprisonment was limited to one year or less.

provision from a similar statute concerning a related subject . . . is significant to show that a different intention existed." (Internal quotation marks omitted.) *William W. Backus Hospital* v. *Stonington*, supra, 349 Conn. 726–27; see also *Felder* v. *Commissioner of Correction*, supra, 348 Conn. 408 ("[i]t is a fundamental principle of our jurisprudence that [a]n identical term used in [statutory provisions] pertaining to the same subject matter should not be read to have differing meanings unless there is some indication from the legislature that it intended such a result" (internal quotation marks omitted)). Nevertheless, the petitioner's interpretation ignores the express references to federal imprisonment and federal offenses in §§ 53a-40 (a) and 53a-46a (i). Indeed, neither of those statutes employs the "inclusion by omission" structure advanced by the petitioner in the present case. Instead, the legislature expressly included the phrases "in a federal correctional institution" and "federal offenses" to bring federal matters within the ambit of our state statutes. See General Statutes § 53a-40 (a); General Statutes § 53a-46a (i). The omission of such an express reference to federal imprisonment in § 53a-31 (a) is more significant than the omission of an express reference to state imprisonment because references to federal procedures in our state statutes are the exception—not the rule. Thus, in the absence of an express reference to federal imprisonment in our state Penal Code, we presume that the legislature is referring to state imprisonment only. See *Felder* v. *Commissioner of Correction*, supra, 407.[10]

[10] To the extent that the reference to "a court of this state" in § 53a-31 (d) creates any ambiguity as to the meaning of "imprisonment" in § 53a-31 (a), our conclusion that § 53a-31 (a) refers only to state imprisonment is bolstered by the limited legislative history regarding § 53a-31 (a). As previously noted in this opinion, subsection (a) was amended pursuant to P.A. 15-211. In written testimony in support of P.A. 15-211, the Division of Criminal Justice (division) explained that the bill was "one of the [d]ivision's 2015 [l]egislative [r]ecommendations and [was] the result of [its] ongoing review of criminal statutes conducted with input from prosecutors and other [d]ivision employees throughout the [s]tate." Conn. Joint Standing Committee

In sum, the habeas court properly interpreted the phrase "such imprisonment" in § 53a-31 (a) in determining that the petitioner's conditional discharge commenced by operation of law on November 10, 2016, when he completed the incarceration portions of his state sentences. As a result, in November, 2019, the petitioner had completed his period of conditional discharge and thus was not in custody on the New Haven conviction when he filed the underlying habeas petition in December, 2019. Therefore, the court properly dismissed the habeas petition for lack of subject matter jurisdiction.

The judgment is affirmed.

In this opinion the other judges concurred.

———————————

Hearings, Judiciary, Pt. 9, 2015 Sess., p. 4952. As to the specific change to subsection (a), the division explained that the amendment "addresses the issue raised by [this court] in *State* v. *Moore*, [supra, 85 Conn. App. 7] and clarifies that when a court imposes a sentence that includes a period of incarceration and a period of probation the probation does not begin until the individual has completed his or her incarceration. Since the purpose of probation is to provide supervision in the community, a period of probation should not be allowed to be substantially reduced or run out entirely when the probationer is in custody of the [respondent]." (Emphasis added.) Conn. Joint Standing Committee Hearings, supra. Thus, the only meaningful discussion of subsection (a) in the legislative history reinforces this court's prior interpretation of § 53a-31 (a), which provides that "whether the defendant is in the custody of the [respondent] is the key consideration in determining whether the defendant has been released for the purposes of § 53a-31 (a)." *State* v. *Galberth*, supra, 175 Conn. App. 798 n.7.